CHARLES R. ANDERSON *et al.*, Respondents, *v.* THE CITY OF ST. LOUIS *et al.*, Appellants.

1. *Revenue — Land commissioner — Wharf opening — Attempt at bargain with property-owner — Jury — Change in jurors — Irregularity of proceedings.* — In proceedings before a land commissioner for the condemnation of property for wharf purposes in the city of St. Louis, it appeared that no attempt had been made by the city to effect an agreement with the owner for the purchase of the property before commencing proceedings; that before the verdict of

the jury had been written out, one juryman died and another left the country; that thereupon the commissioner, seeing the impossibility of obtaining a verdict from the impaneled jury, summoned and impaneled two new jurors, who were sworn on different days; and that these two, with the original four, who were not re-sworn, constituted the second jury. No new notice was given to any of the parties whose property was sought to be taken, that the trial was to be had *de novo;* and this new jury made out and published their verdict. *Held,* that the proceeding was utterly void: 1st, because no attempt was made to effect an agreement with the property-owner prior to the proceedings; 2d, because of the irregularity and palpable violation of the law in the matter of the proceedings for condemnation. But *held,* that in such case injunction by the parties whose property was sought to be condemned would not lie, since they would have a complete, adequate and ample remedy at law, and there would therefore be no necessity for resorting to equity. The trespass in this case sought to be enjoined may be compensated in damages, and, if possession of property were taken, ejectment would lie to try the title and show the illegality of the proceedings. Moreover, where property is sought to be taken through the instrumentality of courts or officers of inferior local jurisdiction, as in the present case, a full and ample means would be afforded to review the proceedings and have their validity passed upon by a common-law writ of *certiorari.*

### *Appeal from St. Louis Circuit Court.*

*S. Reber,* for appellants.

There is no equity in plaintiffs' bill; their remedy was in the forum of the law court, and they had a perfect and adequate remedy at law. If the proceedings are in a court of record, according to the course of the common law, a writ of error is the proper remedy to reverse and vacate the erroneous judgment; otherwise the remedy is by *certiorari.* (Wales v. Willard, 2 Mass. 120; Sumner v. Parker, 7 Mass. 79; Cushing v. Longfellow, 26 Me. 306; In the matter of Negus, 10 Wend. 38.)

Apparent validity and total invalidity in fact, which can only be established by proof *aliunde,* is the necessary ground of chancery jurisdiction. If partial invalidity only is established, no cause is made for the interposition of equity to remove a cloud. (Ewing v. The City of St. Louis, 5 Wall. 413; Heywood v. Buffalo, 14 N. Y. 534; Nichols v. Sutton, 22 Ga 369; Myers v. Simms, 4 Iowa, 500; Longfellow v. Quimby, 29 Me. 196; Moers v. Smedley, 6 Johns. Ch. 28; Brooklyn

v. Meserole, 26 Wend. 132 ; Van Doren v. New York, 9 Paige, 388 ; Ball v. Humphreys, Iowa, 1854.)

In Ewing v. City of St. Louis it was held that with the proceedings and determinations of inferior boards or tribunals of special jurisdiction, courts of equity will not interfere unless it should become necessary to prevent a multiplicity of suits or irreparable injury, or when the proceeding sought to be annulled or corrected is valid upon its face, and the alleged invalidity consists in the matters to be established by extrinsic evidence. In other cases the review and correction of the proceedings must be obtained by the writ of *certiorari*. In Moers v. Smedley *et al.*, *supra*, it was held that the review and correction of all errors, mistakes and abuses in the exercise of the powers of inferior and subordinate jurisdictions, and in the official acts of public officers, belong exclusively to the Supreme Court. In Van Doren *et al.* v. New York, 9 Paige, 388, it was held that where a valid legal objection appears upon the face of the proceedings, through which the adverse party can alone claim title to the complainant's land, there is not in law such a cloud upon the complainant's title as to authorize him to apply to a court of chancery to set aside such a proceeding.

In England it is well settled that error does not lie when the court whose judgment is complained of acts in a summary manner, or in a new course different from the common law. In the matter of Negus, 10 Wend. 38, it was held that in such a case the writ of *certiorari* is the appropriate remedy. In Ruhlman v. The Commonwealth, 5 Binn. 26-7, it was held to be a general rule of law that where a new jurisdiction is created by statute, and the court exercising it proceeds in a summary method or in a course different from the common law, a *certiorari* is the only proper remedy. To the same effect see Savage v. Gulliver, 4 Mass. 178 ; Conn v. Ellis, 11 Mass. 465 ; Edgar v. Dodge, *id.* 670 ; Ball v. Brigham, 5 Mass. 406 ; Bob, a slave, v. The State, 2 Yerg. 173 ; 1 Yerg. 92 ; Wildy v. Washburn, 16 Johns. 49 ; Sheet v. Francis, 3 Ohio, 277 ; see also Conn v. Coombs, 2 Mass. 489 ; Pratt v. Hall, 4 Mass. 239 ; The People *ex rel.* Loomis & Bronson v. Wilkinson, 13 Ill. 660.

31—VOL. XLVII.

The Circuit Court has power to award a writ of *certiorari* at common law to all inferior tribunals and jurisdictions, whenever it is shown either that they have exceeded the limits of their jurisdiction, or in cases where they have proceeded illegally and no appeal is allowed and no other mode of directly reviewing their proceedings is provided. (The People v. The Mayor, 2 Hill, 9; In the matter of Mt. Morris Square, *id.* 14; Birdsall v. Phillips, 17 Wend. 464; Prindle v. Anderson, 19 Wend. 391; Simpson v. Rhinelanders, 20 Wend. 103; Johnson v. Moss, *id.* 145; *Ex parte* Mayor of Albany, 23 Wend. 277; Nichols v. Sutton, 22 Ga. 369; Myers v. Simms, 4 Iowa, 500; Longfellow v. Quimby, 29 Me. 196; Brooklyn v. Meserole, 26 Wend. 132.)

II. That no attempt was made to come to an agreement with the plaintiffs as owners of the premises, before proceeding to condemn, was wholly immaterial.

*H. A. Clover*, for appellants.

It is not compulsory on the city to attempt to obtain the right of way by agreement as a necessary condition precedent to the power to condemn and fix the compensation through a jury.

All the prior charters of the city, and the practice under them, must be considered in connection with the charter of 1867, in order to ascertain its true construction. The repeated re-enactment of the terms of the law of February 26, 1835, must be presumed to have been made with a knowledge of the interpretation which had been put upon it by the city in its practical administration. And it must be taken as re-enacted in the sense in which it had uniformly been interpreted in practice. This rule of interpretation is analogous to, if not identical with, that adopted in the construction of the statutes borrowed from foreign States or countries, the rule in such cases being to adopt the construction made by the courts of the country by whose Legislature the statute was enacted. (Cathcart v. Robinson, 5 Pet. 280.) The seventh section of article VIII of the charter of 1867 seems also to give aid to our construction of the statute.

Why give the statute an interpretation that puts upon the city the necessity of going through the child's play of offering terms

the owner could not accept, or of inviting terms merely for the sake of rejecting them? The agreement must be satisfactory to the city council. It can therefore make its own terms or refuse any agreement at all. The object of the statute was to enforce the constitutional duty of making just compensation for property taken for public use, and to authorize the city to make such compensation by agreement, and in default or absence of such agreement, no matter for what cause, to fix the compensation by a jury of freeholders. Why can not a jury do justice in one case as well as another? Finally, if the city's construction of this statute has been wrong for now more than thirty-five years (which we do not admit), we say *communis error, communa lex*. The case of Lynd v. Clemens is not controlling in this case, because it was not on a statute the same in terms as this, though much like it in some of its chief features.

*I. Z. Smith*, for respondents.

I. No attempt at an agreement with the land-owners was made. (See Lynd v. Clemens, 44 Mo. 540.)

II. After the jury had been impaneled and had heard the evidence and the cause was submitted, another jury was impaneled without notice to the land-owners, and only two of the jurors of this last panel were sworn.

III. The small number of witnesses and the flagrantly slight examination made by the second jury shows that they must have relied upon the evidence produced before the previous jury.

IV. The land attempted to be condemned was not needed by the city, and the whole foundation of the city's right is necessity. Plaintiffs' land can not be taken away from them by mere caprice. Nothing but public necessity can deprive them of it. Judge Leonard says, in giving the opinion in the case of Newby v. Platte County: " As to eminent domain, * * all writers on public law agree that the State can not rightfully exercise it except in cases of public necessity."

This is a case where a municipality, through mere whim, not impelled by any necessity, nor even by public utility, wantonly and arbitrarily seeks to take private property, not for public use—

because the city has no use for it—but merely to transfer the title from the private holder, to whom it is useful, to the city, to whom it is useless. Corporations have become so aggressive, under the liberal grants of the Legislature, that there is nothing left but the courts to shield the citizens from the rapacity of these corporations.

WAGNER, Judge, delivered the opinion of the court.

The relief prayed for in this case was to restrain by injunction the defendants from taking possession of or in any manner disturbing the plaintiffs in the peaceable enjoyment of their land, which was claimed to be condemned for a wharf under certain proceedings before the land commissioner. There was also a prayer to restrain the commissioner from issuing certain executions and the marshal from collecting them, and to set aside the proceedings had before the land commissioner and to declare them illegal and void. The court granted the injunction, and the defendant appealed to this court.

The same point arises in this case that was passed upon and decided in Leslie v. City of St. Louis, namely: that no effort or attempt was made, prior to proceeding to condemn, to make an agreement with the owner in reference to a sale of the property. This was a violation of the law, and an omission which was fatal to the whole proceeding. There were other irregularities so gross and indefensible in their nature that to approve and uphold them would be sanctioning a departure from well-established legal principles, and would virtually place the property of the citizen at the mercy and caprice of the corporation. It has become too painfully true that under the exercise of the power of eminent domain, gradual approaches have been made upon the rights of property, till it is a matter of doubt whether the owner can rely upon the possession of anything. The fashion is, upon every fancied demand or speculative interest, to despoil the proprietor of his estate.

Whilst there is nothing more important for the interests of society than this right of taking private property, upon just compensation being made, for the public use, yet the right should be

exercised with the greatest caution and in conformity with the exact and precise limitations of law.

The land commissioner, in his notice preparatory to proceeding to condemn the property, designated a day for impaneling a jury, and a jury was impaneled in accordance therewith. The jury consisted of six men, and had various sessions, and examined about forty witnesses from time to time; they passed upon each and every piece of property proposed to be condemned (there were 1,290 pieces in all), and agreed upon the amounts of assessments and benefits. Before the clerk had written out the result in a formal verdict, and the signatures of the jurors were appended, one of the jurymen died and another left the country. The land commissioner, seeing the impossibility of obtaining a verdict from the impaneled jury, summoned and impaneled two new jurors, who were sworn in on different days; and these two, with the original four, who were not re-sworn, constituted the second jury. No new notice was given to the plaintiffs, or to any other of the land-owners, that the trial was to be had *de novo*; and this new jury, as thus impaneled, examined some six or seven witnesses, and then made and published their verdict.

The ordinance provides that when a jury is about to be impaneled for the purposes named, all parties, whether interested in damages or benefits, shall be notified that proceedings are about to be had, and that all such interested parties may appear and attend to their interests on the day and at the place appointed by the land commissioner. This whole proceeding was therefore irregular, and would not be good in a civil action between parties litigating a private matter. The jury were not legally constituted or impaneled; no notice was given; and to say that an individual could be deprived of his property under such circumstances would be worthy only of that state of society where the sentiment prevails,

> "That they should take who have the power,
> And they should keep who can."

The proceeding was utterly void, first, because no attempt was made to make an agreement for a fair sale with the owner; and,

secondly, because of the irregularity and palpable violation of the law in the matter of the proceedings upon condemnation.

But the further inquiry arises, whether injunction is the proper remedy. Upon this point I am perfectly clear that it is not. The plaintiffs have a complete, adequate and ample remedy at law, and there is no necessity for resorting to equity. In a very recent decision in this court it was stated that it is now the well-settled principle of equity jurisprudence that the remedy by injunction is allowable against a mere trespasser when the injury sought to be averted goes to the destruction of the inheritance, or is otherwise irreparable in its character. But the sole ground upon which an injunction is granted in such cases is that the trespass complained of operates such irreparable mischief that it is not susceptible of adequate compensation in the way of pecuniary damages; and the party seeking it must bring himself within this principle before he can ,be entitled to this remedy. (Weigel v. Walsh, 45 Mo. 560; see also James v. Dickson, 20 Mo. 79; Burgess v. Kattleman, 41 Mo. 480; Echelkamp v. Schrader, 45 Mo. 505.) The trespass here sought to be enjoined may be compensated in damages, and if possession were taken of the property, ejectment would lie to try the title and show the illegality of the proceedings. Moreover, in cases of this description, where the property is sought to be taken through the instrumentality of courts or officers of inferior local jurisdiction, a full and ample means is afforded to review the proceedings, and have their validity passed upon by the common-law writ of .certiorari.

This very question was recently reviewed and adjudicated by the Supreme Court of the United States in a case taken up, involving a proceeding by the municipal corporation of the city of St. Louis. The only question was whether injunction would lie, and, as the result of the best considered authorities, the court gave it as their conclusion that with the proceedings and determinations of inferior boards or tribunals of special jurisdiction courts of equity would not interfere unless it should become necessary to prevent a multiplicity of suits or irreparable injury, or unless the proceedings sought to be annulled or corrected were

valid upon their face, and the alleged invalidity consisted in matters to be established by extrinsic evidence; that in other cases the review and correction of the proceedings should be obtained by the writ of *certiorari*. Therefore it was held that to a bill filed to enjoin the enforcement of certain judgments rendered against the complainant by the mayor of St. Louis for the amount of alleged benefit to his property from the opening of a street in that city, and setting forth as grounds of relief want of authority in the mayor and various defects and irregularities in the proceedings, a demurrer on the ground that a court of equity had no jurisdiction of the matter and that the complainant had a plain, adequate and complete remedy at law was held to be rightfully sustained. (Ewing v. City of St. Louis, 5 Wall. 413.)

For the reason that the plaintiffs misconceived their remedy, the judgment will be reversed and the petition dismissed.

Judge Currier concurs. Judge Bliss, being interested in the question, gives no opinion.