## CITY OF ST. LOUIS v. FRANK A. GLASGOW et al., Appellants.

Division One, January 3, 1914.

1. **CONDEMNATION: Strict Compliance with Law.** A proceeding to appropriate land for a public purpose must proceed in strict compliance with all the necessary provisions of the law authorizing it.

2. ————: ————: **No Attempt at Amicable Agreement.** In view of the provision of section 4 of article 7 of the charter of St. Louis making the city liable for all damages any owner may sustain by the taking of his land "for the purposes necessary for the efficient operation of the waterworks" and declaring that "if the amount of compensation to be paid to any such owner cannot be amicably agreed upon between the city and such owner, then application may be made by the city counsellor on behalf of the city to the circuit court for the assessment of such damages," it is necessary that an attempt be first made by the city at an amicable agreement with the owner upon the amount of compensation that is to be paid for the land, before the city can proceed in the circuit court to have the land condemned and damages assessed by commissioners.

3. ————: ————: ————: **Affirmative Showing.** And the record of the case must affirmatively show that an attempt to agree with the owner upon the amount of compensation to be paid to him was made, or it cannot be held that the court had jurisdiction to entertain a condemnation proceeding; and unless it does so show, all proceedings thereafter, such as an appointment of commissioners, an assessment of damages by them, exceptions to their report and rulings of the court thereon, are void.

4. ———: ———: ———: **Waiver: Appearance.** Nor did the landowner waive said lack of jurisdiction by appearing to the condemnation proceeding instituted in the circuit court, without an attempt by the city to agree with him upon the compensation to be paid him, and contesting that proceeding at every step. Jurisdiction of the subject-matter cannot be waived in any manner. A reasonable attempt at amicable agreement was a necessary prerequisite to jurisdiction of the court to hear and determine the condemnation proceeding.

5. ———: ———: ———: **Applies Where Property is Actually Taken.** Said section 4 of article 7 of the charter says that the city shall be liable for all damages to the owner "by the taking of any real estate," and it therefore requires an attempt to agree upon the compensation to be made where the property "is actually taken."

6. ———: ———: ———: **No Officer to Make Agreement: Implied Power.** Nor is said section 4 of article 7 of the charter requiring, an attempt at an amicable agreement with the owner of the land upon the amount of compensation to be paid him be made before proceedings in court are instituted, inoperative for that it does not designate any officer of the city who is to have authority to negotiate for a purchase of the land. The charter power being given, all incidental power in the city to carry it into force is implied.

7. ———: ———: ———: **All Subsequent Proceedings Void: Exceptions to Commissioners' Report.** The circuit court having never acquired any jurisdiction of the condemnation proceeding, because the city made no attempt to agree with the owner of the land upon the amount of compensation to be paid him, the question of whether or not the trial court erred in refusing to strike from the files the city's exceptions to the commissioners' report assessing damages, on the ground that the Municipal Assembly did not act upon the same within the time required by the court, will not be determined, for the court having no jurisdiction in the first instance all subsequent proceedings were void.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

REVERSED AND REMANDED *(with directions)*.

*Walter B. Douglas* for appellant.

(1) Whenever in pursuance of any law the property of an individual is to be divested against his will, there must be a strict compliance with all the pro-

visions of law authorizing such a proceeding. Lind v. Clemens, 44 Mo. 540; In re Bledsoe Hill, 200 Mo. 630; 3 Dillon on Municipal Corporations (5 Ed.), secs. 1040, 1041; 4 McQuillin on Municipal Corporations, secs. 1531, 1532; 2 Lewis on Eminent Domain, sec. 497. (2) Especially will the courts require a strict compliance with all conditions precedent to the exercise of the power, and all provisions as to the manner of its exercise intended for the benefit and protection of the citizen. Lind v. St. Louis, 44 Mo. 540; Leslie v. St. Louis, 47 Mo. 474; Anderson v. St. Louis, 47 Mo. 479; Ells v. Railroad, 51 Mo. 200; Moses v. Dock Co., 84 Mo. 242; Wilkinson v. Dock Co., 102 Mo. 130; State v. Wood, 155 Mo. 471. (3) If the statutory authority is not strictly pursued the proceedings will not have the effect to divest the owner of his property. Anderson v. St. Louis, 47 Mo. 479; Ells v. Railroad, 51 Mo. 200; Moses v. Dock Co., 84 Mo. 242; Wilkinson v. Dock Co., 102 Mo. 130; State v. Wood, 155 Mo. 471; In re Bledsoe Hill, 200 Mo. 630. (4) The failure of the city to come to an amicable agreement with the owner as to the amount of compensation to be paid, is a jurisdictional matter, and the proceedings must show the offer and failure to make such agreement. Ells v. Railroad, 51 Mo. 203; and cases under Point 3. (5) The court erred in overruling this defendant's motion to strike from the files the plaintiff's exceptions to the report of the first commissioners. Charter, art. 6, sec. 9, Woerner's Revised Code, p. 392; McQuillin's Amended Charter, p. 319. In this case time was granted by the court to the city, upon application of the city counsel, to report the result of the commissioners' report to the Municipal Assembly. The result of the commissioners' report was reported to the Municipal Assembly, and the assembly failed to act upon said report within the time limited. By the terms of the charter the report was thereby approved, and accepted by the city, and the court was without power to

set it aside. (6) The court erred in appointing a second commission and in ordering a new assessment of damages, after the approval of the report of the first commission by the Municipal Assembly. Charter, art. 6, sec. 9, Woerner's Revised Code, 392.

*William E. Baird* and *E. E. Pearcy* for respondent.

(1) Under the charter of the city of St. Louis, upon which this suit was based, it was not necessary to attempt to agree with the owner of property as to the damages, on account of the taking of his property before bringing condemnation suit. Art. 6, sec. 2, Charter. (2) Section 4 of article 7 of the charter has no application to this case for the reasons: (a) This section does not apply to a case where property is actually taken. It is intended to cover only consequential damages. Sec. 21, art. 2, Constitution of Missouri; Secs. 2, 3, 4, 5, 6 and 7, art. 8, of an act "To Revise the City Charter of the City of St. Louis," in Session Laws, 1867, pp. 72, 73 and 74; Laws 1867, pp. 184 and 188, secs. 1 and 18; Charter of St. Louis (adopted 1876), art. 6, secs. 2-12, and art. 7, sec. 4. (b) If section 4 could be construed to mean damages for the taking of property, then such section is inoperative, because it does not designate the officer of the city who is to have the authority to negotiate for such purchase, and this omission renders this part of the charter meaningless. (3) However, if we grant that Sec. 4, art. 7, of the charter does apply to this suit, the right of the defendant Glasgow to insist upon the negotiations for the purchase of his property has been waived by him. This provision can be waived by the owner. 2 Lewis on Eminent Domain (3 Ed.), p. 897, sec. 499, and sec. 773, p. 1376; United States v. Reid, 56 Mo. 565; Matter of the Water Commissioners, 3 Edwards, ch. 552; President v. Diffebach, 1 Yates, 367; Ney v. Swinney, 36 Ind. 454; Taylor v. Clemson, 11

Clark & Finnelly, 610; Wilson Bros. v Trenton, 53
N. J. L. 178; 15 Cyc. 829; Matter of the New York,
etc., Ry. Co., 21 How. Pr. 434; Railroad v. Donovan,
149 Mo. 101; Lieberman v. Railroad, 141 Ill. 144;
Drainage District v. Dawson, 243 Ill. 177. The defend-
ant made no objection in the circuit court to the peti-
tion in this case before the appointment of the first
commissioners. After their appointment he appeared
before them and introduced evidence. This alone con-
stitutes a waiver. Lieberman v. Railroad, 141 Ill. 144.
(4) The court did not err in overruling the defend-
ant's motion to strike the plaintiff's exceptions to the
report of the first commissioners from the files. Secs.
7, 9 and 10, art. 6, Charter; Eyssell v. City, 168 Mo.
617; St. Louis v. Brinckwirth, 204 Mo. 280.

WOODSON, P. J.—The plaintiff, the city of St.
Louis, a municipal corporation, organized and incor-
porated under the laws of this State, and operating
under a special charter, instituted this suit in the cir-
cuit court of said city, against the defendants, to con-
demn some thirty-odd acres of land for the use of the
waterworks of said city. Said land is particularly
described in the pleadings.

A trial was had which was not satisfactory to one
of the defendants, and he duly appealed the cause to
this court.

The facts are few and undisputed, except as to
the value of the land taken and the extent of the dam-
age done to that not taken.

On December 30, 1907, the circuit court duly ap-
pointed Malcolm McBeth, Charles J. Daley and M. J.
Murphy commissioners to assess the damages. On
August 27, 1908, the commissioners filed their report
with the clerk of said court, in which they assessed
his damages for the land taken at the sum of $35,172,
and that done to the remainder by reason of the tak-
ing of the former, at the sum of $8300.

On the same day the report was filed, the city filed exceptions thereto. And on September 24, 1908, the court gave the city until October 15th, to report the findings of the commissioners to the Municipal Assembly, for approval or rejection.

On November 6, 1908, the defendants filed a motion to strike out portions of the third paragraph of plaintiff's exceptions, which paragraph reads as follows (the words embraced in brackets are those to which the motion was directed):

"Because said commissioners, Charles J. Daley, Michael J. Murphy and Malcolm Macbeth, were prejudiced in favor of defendants Allan C. Glasgow and Frank A. Glasgow, and prejudiced against the city of St. Louis, plaintiff in the above entitled cause, and because of said prejudice, awarded said Allan C. Glasgow and Frank A. Glasgow the sum of $43,372, this being $1400 per acre for the 30.98 acres taken and the damage to the remainder, when said commissioners knew that the property of said Allan C. Glasgow and Frank A. Glasgow was only worth $21,686, or $700 per acre. [And said commissioners further knew that said Allan C. Glasgow and Frank A. Glasgow had, since the institution of this suit, and while the commissioners were hearing evidence on which to base their findings, offered to sell this piece of property to the city of St. Louis for $1000 per acre, or $400 per acre less than the commissioners awarded said Allan C. Glasgow and Frank A. Glasgow. And the commissioners further knew that since the institution of this proceeding, and while the commissioners were at work hearing evidence on which to base their findings in this case, the city of St. Louis purchased thirty-two acres adjoining this property on the south from Albert Meints for $700 per acre, and that said land is similarly located and equal in value to the property owned by said Allan C. Glasgow and Frank A. Glasgow. And the commissioners further knew that the city of St.

Louis had purchased since the institution of this suit, and while the commissioners were hearing evidence upon which to base their findings, the several tracts of land included in the tract originally proposed to be condemned under this proceeding, consisting of 80.20 acres, more or less, for the sum of from $600 to $750 per acre.]

"Because the commissioners erred in awarding $8300, or any sum, to Allan C. Glasgow and Frank A. Glasgow as the damage done to the parcel of land hereinbefore described lying west of the St. Louis Waterworks conduit and the Columbian Bottom Road, said land being separated from the part sought to be condemned, and not so situated as a part of the parcel of land sought to be condemned as to entitle the owners to damages for the condemnation and appropriation of the first described parcel."

This motion was sustained by the court on the 6th of November, 1908.

On the same day the plaintiff filed certificates of the failure of the Municipal Assembly to act on the report of the commissioners with the clerk of the court, which, omitting the caption, are as follows:

"I, Thomas J. Leonard, Clerk of the House of Delegates, hereby certify that the House of Delegates did, prior to and including October 15, 1908, fail to act upon the report of commissioners appointed by the circuit court for the Eighth Judicial Circuit in the matter of condemning certain property for the use of the waterworks of the city of St. Louis, pursuant to Ordinance 23153 of said city, which said report was by the city counselor reported to the Municipal Assembly on August 26, 1908.

"THOS J. LEONARD,

"Clerk of the House of Delegates.

"I, George F. Mockler, Secretary of the Council, hereby certify that the Council did, prior to and including October 15, 1908, fail to act upon the report

of commissioners appointed by the circuit court for the Eighth Judicial Circuit in the matter of condemning certain property for the use of the waterworks of the city of St. Louis, pursuant to Ordinance 23153 of said city, which said report was by the city counselor reported to the Municipal Assembly on August 26, 1908

"George F. Mockler,
"Secretary of the Council."

On December 4, 1908, the defendants filed in the cause a motion to strike from the files the exceptions filed by the city on August 27, 1908, to the report of the commissioners.

Said motion is as follows (formal parts omitted):

"Now comes the defendant Frank A. Glasgow and moves the court to strike from the files the exceptions filed by the city counselor in the name and behalf of the city of St. Louis on the 27th day of August, 1908, to the report of the commissioners herein; and for ground of this motion, this defendant says that on the 24th day of September, 1908, this court gave to the said city reasonable time to report the result of the report of said commissioners to the Municipal Assembly for its information and approval, to-wit, thirty days from said date; that the Municipal Assembly has failed to act upon said report and thereby, as provided in section 9 of article 6 of the charter, the same is now to be deemed approved and all objections thereto waived so that the city of St. Louis is now without power to insist upon its said exceptions."

On the 17th of December, 1908, the court sustained the plaintiff's exceptions and set aside the report of the commissioners; to which said action of the court this defendant duly excepted at the time.

On the 21st of December, 1908, this defendant filed his motion for a rehearing and for a new trial.

On the 2d of January, 1909, the court overruled this defendant's motion to strike the plaintiff's ex-

ceptions from the files *"nunc pro tunc"* as of 17th December, 1908; to which action of the court this defendant duly excepted at the time.

And on the same day the court overruled this defendant's motion for a rehearing and for a new trial; to which action of the court this defendant duly excepted at the time.

Afterwards, on 8th of January, 1909, the court appointed Bernard P. Hufft, Howard Gambrill and H. H. Oberschelp, commissioners.

And on 27th March, 1909, said commissioners filed their report, in which they set out concerning the property of this defendant that they, "find the value of the first described parcel which is to be appropriated and condemned by the city of St. Louis, to be $500 per acre for the thirty-one and eighteen one-hundredths (31.18) acres taken, which amounts to $15,590. And the damage done to the second part by reason of the appropriation of the first described parcel, we ascertain to be $3000."

Upon the incoming of this report, the defendant duly filed his exceptions to said report, the first three of which are based upon the want of jurisdiction in the court to appoint said commissioners because of the fact that the requirement of section 4, article 7, of the charter of the city of St. Louis, which gives the right of condemnation only upon condition that "if the amount of compensation to be paid to any such owner or owners cannot be amicably agreed upon between the city and such owner or owners."

The fourth exception is based upon the position that the Municipal Assembly of the city of St. Louis having approved the report of the first commissioners, pursuant to section 9, article 6, of the charter, the court had no right to set aside that report and appoint other commissioners.

The remaining exceptions are based upon the fact that the assessment of damages in favor of this de-

fendant is grossly inadequate, unreasonable and unjust.

A hearing was had upon these exceptions, and many witnesses were introduced by both parties. Those for the plaintiff testified that the property taken was worth from $300 to $1000 per acre, and those for defendant testified that it was worth from $900 to $2000 per acre; they also testified that the damages done to the remainder of the tract, by reason of taking a part thereof, was from twenty-five dollars per acre up to $100.

On March 1, 1910, the court overruled defendant's exceptions to the report of the commissioners and rendered judgment in favor of the city and against the defendants, in conformity to the report of the commissioners.

After taking the necessary preliminary steps therefor, the defendant, in due time and in proper form, appealed the cause to this court.

I. Counsel for appellants assign many errors, but in the view we have taken of the case it will be unnecessary for us to review but three of them.

The first contention is that the circuit court of the city of St. Louis acquired no jurisdiction over the subject-matter of the proceedings, for the reason that

**Eminent Domain: Waterworks: Jurisdiction: No Attempt to Agree with Owner.** the petition does not charge, nor does the record anywhere show, that there was an effort made on the part of the city to amicably agree with the appellant upon the amount of compensation to be paid him for the land to be taken for the use of the waterworks, and the amount of damages that would result to the remainder of the tract by reason of the taking of a portion of it.

This contention is predicated upon the fact that ordinance No. 23153, authorizing the condemnation proceedings and pleaded in the petition was enacted in

pursuance of and under the authority of article 7 of the city charter relating solely to waterworks.

Said ordinance, as stated in the petition, was enacted for "the purpose . . . to condemn and acquire for the use of the waterworks of the city of St. Louis, and for the purpose of protecting the water supply of said city" certain lands particularly described in the petition; and the words of the ordinance are, "For the purpose of protecting the water supply of the city of St. Louis it is necessary to acquire the following described real estate." Then follows a minute description of defendant's property, along with that of others.

By reading this allegation of the petition and those provisions of the ordinance mentioned, it is made clear that the Municipal Assembly and the pleader in this case understood and proceeded upon the theory that the property described was to be taken by the city for the use of the waterworks thereof; and that being true, the ordinance was, as previously stated, enacted by authority of and in pursuance of article 7 of the city charter which relates exclusively to waterworks, and section 4 thereof provided as follows:

"The city of St. Louis shall be liable for all damages which may be sustained by any person in his or her property, by the *taking of any real estate* for the purposes necessary for the efficient operation of its waterworks, *and if the amount of compensation to be paid to any such owner or owners cannot be amicably agreed upon between the city and such owner or owners,* then application may be made by the city counselor, on behalf of the city, to the circuit court of the Eighth Judicial Circuit, for assessment of such damages in the same manner as is prescribed in this charter in the matter of street openings."

The position of counsel for appellant is that when the State, or any of its creatures having the authority to acquire property by condemnation proceedings, at-

tempts to exercise that authority, and take property against common right and the will of the owner, they must proceed in strict compliance with all the provisions of the law authorizing such proceedings.

This is a correct enunciation of the law, as laid down by this court forty odd years ago (Lind v. Clemens, 44 Mo. 540), and has been reaffirmed numerous times since, as late as the case of In re Bledsoe Hill, 200 Mo. 630.

The same rule is stated in 3 Dillon on Municipal Corporations (5 Ed.), secs. 1040, 1041; 4 McQuillin on Municipal Corporations, secs. 1531, 1532; and 2 Lewis on Eminent Domain (3 Ed.), sec. 497.

Counsel for appellant insist that this rule of strict construction must be applied to said section 4 of article 7 of the city charter, and that when so done, this action must fail, because the record nowhere shows that the city attempted to amicably settle with the appellant the compensation that was to be paid him for the taking and damaging of his property for the purposes mentioned. We are cited to many adjudications by this court supporting this insistence.

This court in the case of Ells v. Pacific Railroad, 51 Mo. 200, l. c. 202, in discussing this question, said:

"The act incorporating the Osage Valley & Southern Kansas Railroad Company is found in the Session Acts of 1857, pp. 59 to 63 inclusive. Sections 9 and 10 of that act point out the mode to be pursued for the condemnation of land. Section 9 provides, 'If any owner of any tract of land, through which said railroad shall pass, shall refuse to relinquish the right of way for said road to said company, or the necessary lands for depots, engine or warehouses, water stations, stopping stations —or turnouts, . . . '

"It requires but a very cursory examination of this judgment, in connection with the provisions of the act above referred to, to see that several of the vitally

essential requirements of the latter were utterly ig-
nored if not wilfully disregarded, in the proceeding
to condemn the lot in question. In this statutory and
summary proceedings; this legal *coup de main;* in
derogation of common law and right, the utmost strict-
ness is required in order to give validity; and unless
upon the *face of the proceeding* had, it *affirmatively
appear* that every essential prerequisite of the stat-
ute conferring the authority has been fully complied
with, every step from inception to termination will be
*coram non judice.*

"Under the statute above mentioned, the refusal
of the owner to relinquish is a jurisdictional fact, in
the absence of which, even a court of general jurisdic-
tion would be powerless by judgment of condemnation,
to wrest property from its owner."

In the case of In the Matter of Lind v. Clemens,
44 Mo. 540, l. c. 541, WAGNER, J., in discussing this
question, said:

"The proceeding was had under the thirteenth sec-
tion of the law 'About Roads in St. Louis County,'
approved March 10, 1849. [Sess. Acts 1849, p. 593.]
The section provides that if, in the construction of any
of the public roads of the county, it shall become nec-
essary to use stone, timber, or earth belonging to in-
dividuals, and no private bargain can be made on fair
terms for the purchase of the same, it shall be lawful
for the county court to order the marshal of the county
to summon a jury of six citizens not owning property
on the road to be improved, who shall assess the dam-
ages to the freehold, and the value of the material
wanted for public use; . . .

"The well-established and firmly-settled principle
of law, founded in justice and reason, is that, when-
ever in the pursuance of any law the property of an
individual is to be divested against his will, there must
be a strict compliance with all the provisions of the
law authorizing such a proceeding. So, if the statute

only authorized proceedings *in invitum* after an effort had been made to agree with the owner on the compensation to be made, the fact of such effort and its failure must appear. [Reitenbaugh v. Chester Val. R. R. Co., 21 Pa. St. 100.]

"The proceeding here was only authorized 'when no private bargain could be made on fair terms.' There is nothing to show that any attempt was ever made to make a bargain, or that any compensation was ever offered for the materials. The owner might well have refused to give permission to part with his property, when he would have been entirely willing to have sold it for a fair remuneration.

"The opinion of Lind, when he was trying to wrest and appropriate Clemens's property, that it would do him very little or no injury, cannot be regarded as of any great weight, nor can it help out the defective compliance with the law."

Again, Judge WAGNER, in the case of Anderson v. City of St. Louis, 47 Mo. 479, l. c. 484, regarding this question, said:

"The relief prayed for in this case was to restrain by injunction the defendants from taking possession of, or in any manner disturbing the plaintiffs in the peaceable enjoyment of their land which was claimed to be condemned for a wharf under certain proceedings before the land commissioner. . . .

"The same point arises in this case that was passed upon and decided in Leslie v. City of St. Louis, namely, that no effort or attempt was made, prior to proceeding to condemn, to make an agreement with the owner in reference to a sale of the property. This was a violation of the law, and an omission which was fatal to the whole proceeding. There were other irregularities so gross and indefensible in their nature that to approve and uphold them would be sanctioning a departure from well established legal principles, and would virtually place the property of the citizen at the

mercy and caprice of the corporation. It has become too painfully true that under the exercise of the power of eminent domain, gradual approaches have been made upon the rights of property, till it is a matter of doubt whether the owner can rely upon the possession of anything. The fashion is, upon every fancied demand or speculative interest, to despoil the proprietor of his estate.

"Whilst there is nothing more important for the interests of society than this right of taking private property, upon just compensation being made, for the public use, yet the right should be exercised with the greatest caution and in conformity with the exact and precise limitations of law. . . .

"The jury were not legally constituted or impaneled; no notice was given; and to say that an individual could be deprived of his property under such circumstances would be worthy only of that state of society where the sentiment prevails,

" 'That they should take who have the power,
And they should keep who can.'

"The proceeding was utterly void, first, because no attempt was made to make an agreement for a fair sale with the owner; and, secondly, because of the irregularity and palpable violation of the law in the matter of the proceedings upon condemnation."

And the same learned judge used this language in the case of Leslie v. City of St. Louis, 47 Mo. 474, l. c. 477:

"But it is not deemed necessary to examine all the charges, as the two leading questions are decisive. These are: First, whether, before instituting proceedings for the condemnation of the property, it was necessary that an attempt should be made with the owner to effect an agreement in reference thereto; and, second, whether injunction in the present case is the appropriate remedy.

"The city charter declares that whenever the city council shall provide by ordinance for the establishing, opening, widening or altering any street, avenue, alley, wharf or public square, or route for sewer, and it becomes necessary for that purpose to take private property, and no agreement can be made with the owner or owners thereof, to the satisfaction of the city council, just compensation shall be paid therefor, to the person or persons whose property is so taken, which the land commissioner shall cause to be ascertained by a jury of six disinterested freeholders of the city, etc. [Sess. Acts, 1867, p. 72, sec. 2.]

"As no effort was ever made to agree upon any terms with the appellant, who owned the property, and the land commissioner proceeded in total disregard of this provision, we must determine whether it is merely directory or whether it is imperative and constitutes a condition precedent to the exercising the right of eminent domain by the city.

"Perhaps no principle has been oftener proclaimed by the courts, or is more firmly established in the very groundwork of the law, than that whenever, in pursuance of authority, the property of an individual is to be divested against his will, there must be a strict compliance with all the provisions of the act authorizing such a proceeding.

"The power to take private property for public use without the consent of the owner is in derogation of the rights of the citizen, and can only be justified on the grounds of absolute necessity; and, when exercised, the power conferring the right must be strictly adhered to and complied with. It is no answer to say that certain things in a given enactment, conferring the authority, do not appear to be essential. Everything is essential which the law has said should be done before this high prerogative right can be carried out and enforced.

"Where the law relating to roads in St. Louis county authorized the seizure of material belonging to individuals for road purposes, 'when no private bargain could be made on fair terms,' this court held that under the provisions of the enactment the county court could not authorize a contractor for building a public road to divest the owner of his property for such a purpose when the proof before it failed to show any attempt to make a bargain with the owner. [Lind v. Clemens, 44 Mo. 540.]

"So, where the act in Pennsylvania regulating railroad companies provided that if the companies could not agree with the owner or owners of property for the compensation proper for the damages done or likely to be done, or sustained by the owner or owners, then the court should appoint viewers to meet and decide upon the amount of damages and make their report, it was decided that there was no right to petition for the appointment of viewers until an effort had been made to agree upon terms of compensation. [Reitenbaugh v. Chester Valley R. R., 21 Pa. St. 100.]

"In New York, where the statute authorized the exercise of the power in cases where the commissioners and owners disagreed as to the amount of compensation, the court declares that the Legislature manifestly intended to give the owner the benefit and opportunity of a voluntary sale, and required the other party to make a fair and honest effort to purchase the land of him before commencing proceedings to take it adversely. Therefore the disagreement of the parties as to the amount of compensation was a material requirement of the statute and an essential prerequisite to the exercise of jurisdiction in the premises. [Dyckman v. The Mayor, etc., 1 Seld. 434; Gilbert v. Columbia Turnpike Co., 3 Johns. Cas. 107.]

"The act provides that when no agreement can be made with the owner or owners of the property to the satisfaction of the city council, then the land com-

missioner shall cause the amount to be ascertained by a jury of six disinterested freeholders. The failure of the parties to agree is the essential prerequisite, and without it the land commissioner has no jurisdiction to proceed. The duty of proving the disagreement devolves upon the city, for the rule is that the party who claims title under the exercise of the right of eminent domain must show affirmatively that the requirements of the statute have been complied with.

"The evident intention of the Legislature was that the owner should have the right and opportunity to dispose of his property for a just and fair compensation, before proceedings should be instituted to deprive him of it against his will. This consideration he is entitled to, and it was not designed to deny him this right. The plain language imports this, and to hold otherwise would do violence to its meaning and injustice to the citizen."

In the case of Moses v. St. Louis Sectional Dock Co., 84 Mo. 242, l. c. 245, BLACK, J., said:

"The revised charter of the city of St. Louis of March 19, 1866, gave the land commissioner power to condemn private property for public use, where no agreement could be made with the owner as to the compensation to be paid. It does not appear that there was any failure to make an agreement, or that any effort to agree with the owners was ever made. It has been held repeatedly by this court, in the consideration of similar laws, that a failure to agree is an essential prerequisite, without which the officer or tribunal had no jurisdiction to proceed. [Leslie v. City of St. Louis, 47 Mo. 474; Anderson v. City of St. Louis, 47 Mo. 479; Ells v. Pacific Railroad, 51 Mo. 200.]"

And in the case of Wilkinson v. St. Louis Sectional Dock Company, 102 Mo. 130, l. c. 140, BRACE, J., in speaking for the court, said:

"These proceedings were approved by ordinance number 6255, July 2, 1867. They were void as to those

served as well as to those who were not served, for the reason that no effort or attempt was made, before commencing such proceedings, to make an agreement with the owners for a sale of their property. [Leslie v. City of St. Louis, 47 Mo. 474; Anderson v. St. Louis, 47 Mo. 479; Moses v. Dock Co., 84 Mo. 242.] And, being absolutely void, they were not admissible in evidence, either to show title in the city, or as evidence tending to characterize the nature of the possession of the city or its tenants of the property in controversy. [St. Louis v. Ferry Co., 88 Mo. 615; Worley v. Columbia, 88 Mo. 106.]''

In State ex rel. v. Wood, 155 Mo. 425, l. c. 471, BURGESS, J., in a dissenting opinion (not however on this point) said:

"In Bishop v. Superior Court, 87 Cal. 226, it was held that a writ of prohibition would not lie to restrain the prosecution of an action by city authorities to condemn a right of way for a sewer, on account of the absence of an averment or proof that the city authorities were unable to agree with the defendant, or that the local board of the municipal corporation had expressly directed the institution of the proceeding, although the statute under which the proceedings were had provided that whenever it shall become necessary for the city or town to take or damage private property for the purpose of rights of way for drains, sewers and aqueducts and the board of trustees cannot agree with the owner thereof as to the price to be paid, the trustees may direct proceedings to be taken, to procure the same. The Missouri statute in regard to the condemnation of land for public use is substantially like that of California, and it has always been held in this State that in case no agreement can be made with the owner of the land as to compensation, the proceedings are absolutely void, if no attempt is made before beginning them to come to an agreement with the owner. [Moses v. St. Louis Sectional Dock Co., 84 Mo. 242;

Graf v. St. Louis, 8 Mo. App. 562; Wilkinson v. St. Louis Sectional Dock Co., 102 Mo. 130.] And the proceedings must show the offer and failure to make such agreement. [Graf v. St. Louis, supra; Moses v. St. Louis Sectional Dock Co., 84 Mo. 242.]''

In re Bledsoe Hill, 200 Mo. 630, l. c. 642, Fox, J., in his well-known, clear and forceful language, regarding this question, said:

"It has been the uniform expression of this court that where private property is sought to be taken against the will of the owner under statutory authority all the statutory requirements must be fully and strictly complied with. Burgess, J., in Williams v. Kirby, 169 Mo. 622, thus gave the expression of the rulings of this court upon that proposition. He said: 'It has been uniformly held by this court, in proceedings to condemn private property for public use, that unless it affirmatively appear upon the face of the proceedings that every essential prerequisite of the statute conferring the authority has been complied with, such proceedings will be void. [Anderson v. Pemberton, 89 Mo. 61; Whitely v. Platte County, 73 Mo. 30; Jefferson County v. Cowan, 54 Mo. 234; Zimmerman v. Snowden, 88 Mo. 218.]' The rule applicable to this proposition has been nowhere more clearly stated than in Leavitt v. Eastman, 77 Maine, 117. The Supreme Court of that State, in discussing this question, said:

" 'It is common learning that where private property is sought to be taken against the will of the owner, under statute authority, all the statute requirements must be fully and strictly complied with. In the procedure no step, however unimportant, seemingly, must be omitted, nor will the substitution of other steps, in the place of those named in the statute, be sufficient. To deprive the citizen of his property requires the whole statute, and nothing in the place of the statute.'

"It, therefore, follows that, in harmony with the well-settled rules of law as herein pointed out, it is essential in order to support a valid judgment in this proceeding that it must affirmatively appear upon the face of the record that every essential prerequisite of the statute conferring authority to take any part of the value of the appellant's private property for public use has been complied with."

There are other cases in this State, so numerous, and in other States of the Union, announcing the same rule, that it would be almost a physical impossibility for this court to review them in a single case, and our limited review of them so far was actuated by the strenuous insistence of counsel for respondent, to the effect that the failure of the record to show affirmatively an effort to agree with the owner of the property, as to the compensation to be paid to him for the property to be taken, was not jurisdictional.

**Eminent Domain: Jurisdiction: Affirmative Showing.**

In the face of this authority it would indeed be a bold court, which would fly in the face of these authorities here and elsewhere, and hold that such prerequisite was not necessary to confer jurisdiction upon the courts to try such condemnation proceedings.

In passing, I would like to add one thought, which it seems to me, should have weight in support of the rule just announced, and that is, that there is no class of litigation where the individual rights, desires and pleasures of the property owners are so lightly considered, as in this class of cases. The choicest parts of his lands, his barns, outbuildings and even residence, may be ruthlessly taken from him. Not only for that reason, he should have the unquestionable right, both legally and morally, to attempt, at least, to agree with the other party as to the amount of compensation and damages he should receive for the taking and damaging of his property, but also where it is

common knowledge, and as this record so conclusively shows, that the amount of compensation and damages to be awarded and assessed, is controlled almost exclusively by the opinions of "would be" expert witnesses, which seem to have no limitations except the desire of those who employ them to testify.

Moreover, the testimony of expert witnesses in this class of cases is more or less colored or biased by their individual opinions, however erroneous they may be, as to what the real benefits and damages that will be done to the property, as the result of such appropriation of defendant's property.

Again, this class of litigation is always expensive, to say nothing of counsel fees.

One witness who testified for the city, that upon a former occasion the city condemned a part of his lands in the same vicinity as this, for similar purposes, and that the costs of the proceedings to him, some $4000, was many times the actual value of the land taken.

In this case, the witnesses for the respective parties vary in the value of this property proposed to be taken, from $400 to $1500 per acre, and the court and commissioners were evidently more or less governed by that character of testimony, which doubtless largely accounts for the great disparity between the first and second awards made by the commissioners.

The great amount of costs that accrue in this class of cases, as in this, and the extreme uncertainty as to the result thereof, doubtless was one of the moving causes that induced the lawmakers to enact a law requiring an effort, on the part of the person asserting the right to condemn, to make a reasonable attempt to agree upon the amount of compensation to be paid for the land proposed to be taken, before a suit for condemnation could be legally instituted. But be that true or not, there is not a State in the Union, so far as I have been able to find, after a somewhat extensive search, which had a law authorizing the institution of

this class of cases, without first requiring of the party who seeks to acquire property by condemnation, to agree or attempt to agree upon the amount of compensation to be paid therefor.

While counsel for respondent earnestly insist that under section 4 of article 7 of the charter it was not necessary, as a prerequisite, for the record to affirmatively show that an attempt had been made between the city and appellant to agree upon the amount of compensation to be paid him for the land proposed to be taken, prior to the institution and maintenance of this suit, yet apparently apprehending that this court might so hold, they suggest that this case is not governed by said section 4 of article 7 of the charter, but is controlled by "section 21, article 2, of the Constitution of Missouri; sections 2, 3, 4, 5, 6, and 7 of article 8 of an act 'To Revise the City Charter of the City of St. Louis' (Laws 1867, pp. 72, 73 and 74); Laws 1867, pp. 184 and 188, sec. 1 and 18; Charter of City of St. Louis (adopted 1876), article 6, sections 2 to 12, and article 7, section 4."

*Eminent Domain: Agreement with Owner: Application of Sec. 4, Art. 7 of Charter.*

Counsel have not very lucidly explained their reasons for this suggestion, but have contented themselves with the following brief observations:

"(1). This section (four of article 7 of the charter) does not apply to a case where property *is actually taken.* It is intended to cover only consequential damages," and

"(2). If section 4 could be construed, however, to mean damages for the taking of property, then such section is inoperative, because it does not designate the officer of the city who is to have the authority to negotiate for such purchase, and this omission renders this part of the charter meaningless."

We will briefly consider these two suggestions in the order stated.

As to the first: Said section 4 of the charter has heretofore been copied *in haec verba,* and by reading it it will be seen that it expressly provides that "the city of St. Louis shall be liable for all damages which may be sustained by any person in his or her property, *by the taking of any real estate* for the purposes necessary for the efficient operation of the waterworks," etc. This language is a complete refutation of this suggestion of counsel, and, therefore, needs no further consideration.

And regarding the second suggestion mentioned, we have this to say: That while this section 4 does not designate the person who should negotiate for the purchase of real estate for the purposes therein mentioned, yet the city of St. Louis, and all other cities of the State, by necessary implication, if not by express grant, have ample power to do all incidental things that may be required to carry into effect the express power or authority granted regarding a particular matter. This is the universal holding of this court, and those of all other States throughout the Union, as well as those of the Federal Government.

We are, therefore, clearly of the opinion, that, since the city in no manner attempted to amicably agree with Dr. Garrison, as to the amount of compensation that should be paid to him for the land in question, the circuit court of the city of St. Louis never acquired jurisdiction of the subject-matter of the suit.

Counsel for respondent also seem to be apprehensive of the quicksands underlying their previous positions, and boldly meet the situation by **Jurisdiction of Subject-Matter: Waiver.** insisting that even though the circuit court, in the first instance, did not acquire jurisdiction of the case as suggested, nevertheless, the appellant waived jurisdiction by appearing in court and contesting the case or proceedings.

In support of this proposition, counsel cite several authorities, and among others, the following from this State: United States of America v. Reed, 56 Mo. 565; and St. Louis & Kansas City Railway Co. v. Donovan, 149 Mo. 93.

Neither of those cases are in point. The first was a proceeding instituted in the circuit court of St. Louis to condemn certain real estate for public purposes. The petition clearly stated that the parties *were unable to agree* upon the proper consideration to be paid for the land; and after the defendant Reed had been duly served with process, and the commissioners had filed their report, and after said report had been confirmed by the circuit court, without any objections having been filed thereto, as provided by statute, he appeared in court, some ten days after the judgment of the court confirming the commissioners' report had been rendered, and filed a motion to set aside the judgment of the court and the report of the commissioners, for numerous reasons, among others, that the court had no jurisdiction of the cause because the record did not show an attempt on the part of the United States to agree with Reed upon the amount of compensation that was to be paid him for the land proposed to be taken; also for the inadequacy of compensation allowed him by the commissioners. The court refused to entertain the motion, but finally, upon an agreement of parties, and with an understanding with the court that Reed would waive all the grounds of his motion except that regarding the inadequacy of compensation awarded to him by the commissioners, the court opened up the case and heard him upon the question of compensation only; and after due consideration, overruled defendant's exceptions and rendered a second judgment of confirmation, from which Reed duly appealed to this court. In this court, Reed, in violation of his agreement to waive all questions except the one relating to the inadequacy of compensation, presented for

our consideration, the question of jurisdiction, previously mentioned; but this court ignored that question and affirmed the judgment of the circuit court upon the sole ground that the record showed that the parties had attempted, but were unable, to agree upon the amount of compensation that was to be paid for the land. After stating the facts of the case, the court, on page 570, said:

"Afterwards, on the 8th day of November, 1872, the court granted a hearing and trial of the issues raised in said exceptions of said Reed, both parties, the petitioner and said Reed, consenting that the court should determine what additional allowance, if any, should be made to said Reed in the event that his exceptions should be sustained.

"The court afterwards heard the cause under the agreement of the parties, and each party offered evidence tending to prove the value of the lot so set out in the petition as belonging to said Reed. The evidence was somewhat conflicting, some of the evidence tending to prove that the lot was worth not more than, if so much as, the sum of twenty thousand dollars, that being the sum fixed by the commissioners in their report, while other evidence tended to show that the lot was worth more than that amount. After the evidence was heard the court overruled the exceptions filed by the defendant as to the damages allowed by the commissioners, and the defendant then filed a motion for a new trial, which being also overruled, the defendant appealed to general term of said court, where the judgment rendered at special term was affirmed; from which defendant appealed to this court.

"The proceedings in this case after a final judgment had been rendered on the report of the commissioners, who had been appointed by the court, seem to have been irregular and rather extraordinary. It seems that the commissioners made their report which was regularly filed in court. After the filing of the re-

port, the statute authorizes any person whose property is sought to be appropriated, to file exceptions to the report with the clerk of the court where the proceedings are pending at any time within ten days from the time the report was filed. No exceptions were filed in this case within the time allowed, but the defendant appeared and filed exceptions some eight or ten days after the time fixed for the filing thereof had expired. The court, after the exceptions were so filed with the clerk, seems to have (as it certainly had the right to do) disregarded the exceptions thus filed out of time, and rendered final judgment on the report of the commissioners against all of the defendants to the proceeding including the defendant Reed. After the rendition of this final judgment, and without any attempt having been made to set the same aside, the defendant Reed appears in court and asks leave of the court to file exceptions to the report of the commissioners, which, when filed, were to have the same effect as if they had been filed within ten days after the filing of the report. The court gave him permission to file an exception to the report, if the exception was confined to the amount of the compensation allowed him by the commissioners. This the defendant seems to have agreed to, and after the exceptions were allowed to be thus filed, the parties consented to submit that single question, as to the proper amount of compensation to be paid defendant for this lot, to the court for hearing and determination, and with the further agreement that the court [having] sustained the objection to the report on the ground that the damages assessed were inadequate, that the court should go on and fix the excess of damages to be allowed beyond the amount allowed in the report. The court heard this agreed case and overruled the defendant's exceptions, of course finding that the damages allowed in the report of the commissioners were sufficient. It is from this action of the court that the appeal is taken,

and we are here asked on the appeal from this judgment rendered under such a state of facts, to review the action of the court in making the order appointing commissioners. This I have before said, seems to me to be irregular, at least, as long as the final judgment rendered on the report of the commissioners remains in force, no appeal having in any way been taken therefrom.

"It is, however, insisted, by the defendant, that no authority was given the plaintiff to commence the proceeding against his lot until plaintiff had first attempted to purchase the lot from the defendant, and defendant had refused to sell the same at a fair price, or the defendant was not able to convey; and that as neither of these facts appear on the record the court had no jurisdiction over the matter, and could not lawfully appoint the commissioners.

"It has been several times decided by this court, that in cases like this it must appear in the proceedings that there has been a strict compliance with the law under which the proceedings are had, and that it must be shown that an attempt had been made to purchase the land of the owner, before any proceeding could be commenced to appropriate the same against the will of the owner. [Lind v. Clemens, 44 Mo. 540; Ells v. Pacific Railroad, 51 Mo. 200.]

"In the case under consideration the petition avers that the United States had been unable to agree with the owners therein set forth upon the proper compensation to be paid upon the appropriation of the premises for the uses of the United States.

"The court, after hearing this petition, the several parties having been notified as the law directs, appointed the commissioners. It seems to me then, that it does appear upon the record that no agreement could be made for the purchase of the land, and that the court acted upon a proper finding of the fact; but

be this as it may, when the defendant appeared in court and consented to waive all objections to the report of the commissioners, for the purpose of getting leave to file an exception out of time to the report, on the ground alone of the insufficiency of the damages, and went to the trial of that question by agreement, he thereby admitted that all of the facts stated in the petition, which were necessary to confer jurisdiction, were true, and that it is now too late for him to controvert said facts.''

While there is language contained in the syllabus of that case which lends color to respondent's position, it will be seen by reading the opinion delivered, that there is absolutely nothing contained therein which in any manner supports the question of waiver, as insisted upon by counsel for respondent.

And in the other case cited, no such question as this was involved or considered. That case simply held, and properly so, that where all the proceedings in the case were regular, save the one that the defendant was not served with notice of the suit, still he was in no position to take advantage of that failure, where the record, as there, showed that he had voluntarily entered his appearance and participated in the trial of the cause as though he had been served.

It is readily seen and understood that neither of those cases is authority for the position that the appellant in this case waived the jurisdiction of the circuit court over the subject-matter of the suit, by appearing and fighting the case, which the record shows he did at every stage of the procedure.

But independent of that, it is a uniform rule that jurisdiction as to the subject-matter of any suit cannot be waived in any manner; and as is shown by the cases previously considered, a judgment in a case like this is absolutely null and void, and may be set aside and for naught held, even in a collateral proceeding, if the record does not affirmatively show that the plaintiff

attempted to amicably settle the compensation to be paid for the land, with the owner thereof, before the institution of the suit.

This was expressly held in the following cases: Ells v. Pacific Railroad, 51 Mo. l. c. 203; State ex rel. v. Wood, 155 Mo. l. c. 471; Anderson v. City of St. Louis, 47 Mo. l. c. 484; Wilkinson v. St. Louis Sectional Dock Co., 102 Mo. l. c. 141; In re Bledsoe Hill, 200 Mo. 630, and cases cited.

In all of these cases, and if my memory serves me correctly, all the other cases cited, show that the defendant was in court and contested the proceedings as was done in the case at bar.

The law in no uncertain tones declares, as we have shown, the court acquires no jurisdiction of the subject-matter of such a suit, without the record affirmatively shows that prior to its institution, the party seeking to condemn the land, attempted to amicably settle with the owner the compensation to be paid therefor.

Now, if as in this case, that attempt was never made by the city, then by what process of reasoning can it be said that defendant waived that attempt of settlement simply by fighting the suit from start to finish. We submit, none.

We are, therefore, of the opinion that the circuit court of the city of St. Louis acquired no jurisdiction of the subject-matter of this suit, and that in consequence thereof the entire proceedings *in court* are absolutely null and void.

II.   It is next insisted by counsel for appellant that the circuit court erred in overruling their motion to strike from the files the respondent's exceptions to the report of the first commissioners.

No Jurisdiction: All Subsequent Proceedings Void. .

This insistence is predicated upon the fact that on the same day that the first commissioners' report was

filed, to-wit, September 24, 1907, the circuit court, in pursuance to the mandate of section 9 of article 6 of the charter, Woerner's Revised Code, page 392, gave the city until October 15th to report the findings of the commissioners to the. Municipal Assembly of the city, for the purpose of confirmation or rejection; and the Municipal Assembly having failed to act upon said report within the time limited by the court, it stood approved by operation of said section of the charter, and that consequently the circuit court had no legal authority to set aside the report which the Municipal Assembly had approved, or in other words, said approval settled the case in so far as the city was concerned and it had no right to prosecute the case after the settlement or approval of the report, and therefore the court should have sustained appellant's motion to strike out the city's exceptions previously filed thereto, and have approved the report of the first commissioners, and rendered judgment in favor of the appellant, for the sum reported therein in his favor.

Said section 9 of the charter reads as follows:

"Upon the report of said commissioners being filed in the circuit court, or with the clerk thereof, the court shall give to the city of St. Louis, upon application of the city counselor, reasonable time to report the same to the assembly for its information and approval, during which time no action will be had in or by said court upon said report; and if the Municipal Assembly fails to act upon said report within the time limited, said report shall be deemed approved, but if during said time limited the Municipal Assembly disapprove said report of said commissioners, the said court shall set aside said report and order a new assessment of damages and benefits, and the city of St. Louis shall have the right at any time before the final confirmation of said report, to dismiss and withdraw said proceedings on payment of the costs thereof."

Whatever merit there may have been in this insistence, which we do not pass upon, appellant's successful attack upon the jurisdiction of the circuit court to try the cause for the reasons stated in paragraph one of this opinion, cuts back of this question and destroys the first report of the commissioners, root and branch, just as completely as it did the second report, and all other steps *taken in the case by the circuit court,* as we have held in that paragraph.

We are, therefore, of the opinion that the judgment should be reversed and the cause remanded to the circuit court with directions that the cause be dismissed, in order that the city, if it so desires, may proceed under the ordinance in question, to amicably settle with the appellant, the amount of compensation which should be paid to him for said lands, and that if an agreement in that regard cannot be reached, then the city will be in a position to legally institute proceedings to condemn the same for the purposes mentioned.

All concur; *Bond, J.,* in result.