THE CITY OF ST. LOUIS v. WIGGINS FERRY COMPANY, *Appellant.*

1. **Deed**: PRESUMPTION: WAIVER. A clause in a city ordinance, by authority of which a deed to the city for certain wharf premises was made, provided that the deed should be binding on the city as soon as the owners of fifteen hundred feet of the wharf should have executed the deed to the satisfaction of the mayor. *Held,* in ejectment by the city to recover the premises, (1) that in the absence of any evidence to the contrary, it must be presumed that the deed was delivered and signed by the prescribed number of property owners, and (2) that the city having entered upon the performance of the stipulations on its part contained in the deed, waived the stipulation in its favor in the ordinance.

2. **Estoppel.** An estoppel cannot be based upon a void judgment where neither the party setting up the estoppel, nor those under whom he claims, have lost or given up any rights or property by reason of such void judgment.

3. **Deed**: COVENANT: CONDITION. Whether words amount to a condition or covenant is a matter of construction, and the intention of the parties will control.

4. ————. A deed held not void for uncertainty in the description of the premises conveyed.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*R. H. Kern* and *Noble & Orrick* for appellant.

(1) The agreement of January 28, 1853, is inoperative and of no force, because it was never perfected as contemplated and as required by its terms. (2) If, however, it is true that a less number than the whole could be bound by the agreement, then that number is certainly fixed to be holders of not less than fifteen hundred feet :

and there is no evidence that such number signed the agreement. *Anderson v. City*, 47 Mo. 479. (3) The city here claims a specific lot or parcel of land exactly described by metes and bounds. No such property is described in the agreement, nor can it be ascertained by the only parts of plat "A" referred to in the contract. (4) The contract is void for uncertainty of description. (5) Even if the contract were properly executed by parties owning fifteen hundred feet, other express conditions thereof precedent to any title vesting in the city were not performed by it and ejectment cannot now be maintained thereon. (6) But even as a condition subsequent, the foregoing covenants were valid against the plaintiff, and the failure on the part of plaintiff to perform the condition, even as a condition subsequent, caused a forfeiture of the agreement. *Bank v. Drummond*, 5 Mass. 321; *Hubbard v. Hubbard*, 97 Mass. 191, 192. (7) Regarding the contract of 1853, from another point of view, we shall arrive at the same conclusion as above, as to the subject-matter; the contract relates not to the fee in the land, but to the easement merely, and the plaintiff does not now claim that the fee ever passed. Wash. on Easements, p. 29, sec. 3; *Portmore v. Brem*, 3 Dowling & R. 145. (8) The city abandoned and rescinded the contract and instituted condemnation proceedings against the parties of the first part, years before this action.

*Leverett Bell* for respondent.

BLACK, J.—This is an action of ejectment for that part of north wharf which lies between two adjacent streets in the city of St. Louis when produced to the river. The defendant is in possession under leases made to it in 1870 by Benoist, Page and Bogy. The city claims possession by virtue of a deed made in 1853, by some forty odd persons, including the defendant's lessors.

These lessors are, therefore, the common source of title beyond which we need not inquire.

. The substantial portions of the deed, so far as material to this case, are as follows: The first parties describe themselves as owners and part owners of real estate fronting on the west bank of the Mississippi river, from Cherry street to northern limits of the city; and for one dollar and the advantages to accrue to them from the improvement of the wharf, etc., convey to the city all their title to all lands lying eastwardly of the proposed western boundary line of the wharf as shown on a plat annexed to the deed. "*Provided*, also, that said city of St. Louis shall establish the wharf by ordinance in conformity with said plat 'A' (including the widening westwardly between Biddle and Florida streets), and shall also make provisions for opening the whole of said wharf at the earliest period consistent with the public interest, and the means of said city, before this contract shall be binding on the first parties or any of them;" and the said second party covenants with the said first parties "that one-half of the wharfage collected annually shall be expended on the wharf north of Cherry street," etc., the expenditures only to be made on those parts relinquished by the first parties, or to which the city shall otherwise acquire a right for wharf purposes. The city by the same deed relinquished to the first parties all of its title to all accretions west of the western boundary line of the proposed wharf.

1. A contention on the part of the appellant is that this deed never took effect, because the ordinance, by authority of which the deed was made, contains a clause to the effect that the agreement having reference to the deed shall be binding on the city as soon as the owners of fifteen hundred front feet of the wharf have executed the same to the satisfaction of the mayor. Although it was not shown on the trial of this cause that the deed

had been signed by persons owning that number of front feet, still the deed was acknowledged by all of the parties thereto, and was put to record in January, 1854. In the absence of any evidence to the contrary, it must be presumed that the deed was delivered as well as signed by the prescribed number of property owners. Besides this presumption, the city entered upon the performance of the agreements contained in the deed shortly after its date, and by so doing waived, as it had a right to do, this stipulation in its favor in the ordinance. It is, therefore, immaterial whether or not the persons who signed and delivered the deed represented fifteen hundred front feet.

2. Has the city complied with those provisions of the deed which are made conditions precedent? The evidence conduces to show that an ordinance was passed in 1853, establishing the line of the wharf from Biddle to Florida streets, which also directed the opening of the unopened portions thereof; and that this part of the wharf has long since been constructed, paved and put in general use. Besides the ordinance, under authority of which the deed was made, another one was passed and approved August 6, 1864, numbered 5403, which again established the wharf from Biddle street to the northern limits of the city. The proceedings had under this ordinance for the condemnation of property were approved in 1868, and a large appropriation was made to pay the benefits assessed against the city. Out of eleven thousand feet, the whole length of north wharf, over five thousand feet had been fully improved before this suit was commenced. A dyke had been constructed the whole length on the river line and the wharf filled in to the shore line except at the site of an elevator. From 1853 on, the city has expended upwards of $300,000 on the improvement. This evidence shows a fair and full compliance on the part of the city with all the conditions

precedent contained in the deed. It is not contemplated by the deed or ordinance, by authority of which it was made, that the city should make the whole improvement at the same time. The contrary is clearly indicated.

But it is shown that the condemnation proceedings had under ordinance 5403 failed from their inherent illegality, and to that end *Anderson v. St. Louis*, 47 Mo. 479, is made a part of the record. In these proceedings the city officers sought, it would seem, to condemn the property, including the very property which the city had acquired by the deed now in question, because of which it is claimed the city abandoned and forfeited all rights under the deed. No authority is cited or suggestion made which can lead to such a result. The proceedings were void, certainly so as to all property owners who did not in some way ratify them. We do not see how an estoppel can be based upon a void judgment, when, as here, neither the party setting up the estoppel nor those under whom he claims, have lost or given up any rights or property by reason of such void judgment. The party instituting such proceedings is not precluded from asserting their invalidity. *Mercier v. Chace*, 9 Allen, 242. Moreover the city officials had no power vested in them to abandon property acquired for, improved and used as a public highway.

3. It is, of course, not claimed that the further words used in the deed by which the city covenants to expend one-half of the wharfage annually collected on the north wharf created a condition precedent, but it is claimed that in effect they amount to a condition subsequent. Evidence that this stipulation had not been complied with was excluded, and of this ruling error is assigned. Whether words amount to a condition or covenant is matter of construction and the intention of the parties should control. 4 Kent [13 Ed.] 132. The same author says the construction of a deed as to its

operation and effect, will, after all, depend less upon artificial rules than upon the application of good sense and sound equity to the subject and spirit of the contract. In the deed before us, when the parties have designed to make their agreements conditions they have said so in plain terms. They have not so said with respect to the expenditure of the wharfage. It does not appear that a failure to expend one-half of the wharfage on the north wharf is to operate upon the title before vested and render it defeasible. The parties contemplated no such a result and hence there is no condition subsequent. The stipulation is no more than a covenant, the breach of which does not defeat the easement before vested.

4. There is no merit in the further claim that the deed is void for uncertainty. The plat, made a part of the deed, shows clearly the "proposed western boundary line of the wharf," and also the "western boundary line of wharf as established." The first parties convey all their rights to all land eastwardly of the proposed western boundary line. This deed also says they convey all land in front of the red line and where the red line is broken, then all eastwardly of the black line. The old and proposed wharf lines are fixed as to location by their connection with the parallel and cross streets, which are also shown on the same plat. There can be no difficulty in identifying the property conveyed. None was experienced on the trial. Monuments appear at almost every step, for fixed street lines are monuments. It is true the copy of plat read in evidence did not by color show the red from black line as made upon the original plat. There appears to be, however, but one line along the property here in question, and there is, therefore, no room for confusion.

The judgment is clearly for the right party and it is affirmed. All concur