WILKINSON, *Appellant*, v. THE ST. LOUIS SECTIONAL DOCK COMPANY.

1. **Condemnation Proceeding**: ATTEMPT TO COMPROMISE. Condemnation proceedings are absolutely void where no attempt is made before beginning them to make an agreement with the owners of the land for the sale of their property.

2. —— : —— : EVIDENCE. Where so absolutely void, they are not admissible in evidence in ejectment, either to show title in a party, or to explain the nature of his possession, not taken or held by virtue of them.

3. **Practice in Supreme Court**: ERROR IN FAVOR OF APPELLANT. The supreme court will not reverse a judgment for error in giving an instruction on adverse possession where the error was in favor of the appellant.

4. **Practice, Civil**: INSTRUCTIONS. The trial court may give additional instructions after submission of the cause to the jury.

5. —— : —— : ARGUMENT. Its refusal to permit argument on such additional instructions *held* not error in this case.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*E. P. Johnson, G. W. Hall* and *John A. Harrison* for appellant.

(1) The concessions to Brazeau and the titles derived therefrom, all calling for the river as a boundary, vested title to the land on the shore, and all accretions to it. *City v. Lemp*, 93 Mo. 477; *Myers v. St. Louis*, 82 Mo. 374; 113 U. S. 566; *St. Louis v. Risley*, 40 Mo. 356; 77 U. S. 110; *Buse v. Russell*, 86 Mo. 209; *Campbell v. Gaslight Co.*, 84 Mo. 352. (2) The confirmation of these concessions, in 1836, related back and vested title from the time they were before the board of commissioners, in 1806, years before

Duncan's Island began to form.    *Landes v. Brant*, 51
U. S. 348; *Callahan v. Davis*, 90 Mo. 78; *Hammond v.
Johnston*, 93 Mo. 198.    (3)   An island in a river is a
body of land around which a channel of water flows at
low water mark.    *Handley v. Anthony*, 18 U. S. 378;
*Missouri v. Kentucky*, 78 U. S. 407; *Railroad v.
Schurmier*, 74 U. S. 284; *Stover v. Jack*, 60 Pa. St. 339.
(4)   There was no adverse possession of the premises
during the life of Picotte, the acts detailed by the wit-
nesses being mere trespasses ( *Pike v. Robertson*, 79
Mo. 615; *Musick v. Barney*, 49 Mo. 458); and especially
is this true in view of the character of the premises,
which were subject to overflow, being the shore of a
great navigable river in flush times of steamboating,
which shore navigators had a right to use.    *O'Fallon v.
Daggett*, 4 Mo. 343.   Moreover, defendants had no color
of title in evidence, and the defendant dock company
did not offer a lease or written permission to occupy,
but, assuming that they both had color of title, Picotte
owned and was in possession of the shore property, and,
if, as we believe, that gave him title to these premises,
he could only be dispossessed of any part of them by an
actual *pedis possessio*, which must have been continued
on that particular spot for the statutory period, and
none of the witnesses claimed such to be the fact.
*Bradley v. West*, 60 Mo. 33; *Crispen v. Hannavan*, 50
Mo. 545; *Shultz v. Lindell*, 30 Mo. 310.    (5)   The
plaintiff was a married woman prior to the time defend-
ants, or either of them, pretend to have had any posses-
sion of the premises, and so remained up to within two
years prior to the institution of this suit, and if the
premises were not held adversely at the time of her
father's death, October 14, 1860, or if it ceased to be so
held afterwards for an instant, she could not be affected
by it, as the statute does not begin to run against a mar-
ried woman until she becomes discovert.    *Dyer v. Wit-
tler*, 89 Mo. 81; *Bradley v. Railroad*, 91 Mo. 493.    (6)
But assuming that the premises were held adversely at

the time of Picotte's death, and so continued up to the institution of this suit, it was adverse only against his widow or her grantee, who held a life-estate in them under his will up to the time of her death, in 1869, within ten years of the institution of this suit, and she or her grantee only could have maintained an action for them during that time. *Salmon v. Davis*, 29 Mo. 181. It follows the plaintiff, who could not have maintained an action for them during that period, could not be barred thereby (*State to use v. Heman*, 70 Mo. 456); and the period during which her right of action was suspended must be deducted from the time required by the statute. *Hammond v. Johnston*, 93 Mo. 221, and cases there cited; *May v. Hill*, 5 Littell (Ky.) 313; *Armstrong v. Morrill*, 81 U. S. 141 and 145; *Tapley v. McPike*, 50 Mo. 580. (7) The evidence showed not only beyond a substantial doubt, but conclusively, that plaintiff owned the undivided one-half of the premises sued for, and that her title was unaffected by adverse possession, and the jury should have been instructed to find for her, and this court is asked to render judgment for her for that interest, or direct the circuit court to do so and assess her damages for the detention of the premises. *O'Reilly v. Nicholson*, 45 Mo. 166; *Morgan v. Durfee*, 69 Mo. 469; *Powell v. Railroad*, 76 Mo. 80. (8) The court erred in refusing to permit plaintiff's counsel to argue the cause to the jury, as presented by the additional instructions given after the jury had retired. *Chouteau v. Iron Works*, 94 Mo. 388; *Norton v. Dorsey*, 65 Mo. 377; *State v. Alexander*, 66 Mo. 163; *Dowzelot v. Rawlings*, 58 Mo. 78; *Cluskey v. St. Louis*, 50 Mo. 89; *Burns v. Wilson*, 1 Mo. App. 179; *Scott v. Haynes*, 12 Mo. App. 596; *Fox v. Depot Co.*, 7 Mo. App. 593; *Chinn v. Davis*, 21 Mo. App. 365.

*Leverett Bell* for respondents.

(1) The proprietor of land in Missouri on the bank of the Mississippi river does not own to the center of

the stream, but only to the water's edge.   He is entitled
to the accretion attaching to his land.   He is not, how-
ever, the owner of an island that springs up in the
middle of the stream, whether the island be on one side
or the other of the thread of the river.   He goes only to
the margin of the river. *Benson v. Morrow*, 61 Mo. 345,
at p. 351 ; *Buse v. Russell*, 86 Mo. 209 ; *St. Louis v.
Lemp*, 93 Mo. 477.   The rights of riparian owners in
Missouri are determined according to the principles
of state law.   *St. Louis v. Myers*, 113 U. S. 566.   It is
idle to inquire what rule, with reference to riparian
owners, has been adopted in Illinois and in other states.
The law is settled, so far as Missouri is concerned, by
the cases of *Benson v. Morrow* and *Buse v. Russell*,
above cited, and the instructions below, covering this
subject and numbered 1, 2, 3, 4, 7, 8, 9 and 10, are a
restatement of the doctrine contained in those cases.   In
support of instruction 1, see *Stover v. Jack*, 60 Penn. St.
339.   ( 2 )   The adverse possession established by the
evidence is sufficient to bar the plaintiff.   Instructions
5 and 6, taken together, state the law correctly.   The
facts are that on March 3, 1851 ( Laws of 1850–1, p. 573),
the state of Missouri transferred, set over and conveyed
to the city of St. Louis the premises known as Duncan's
Island.   This constituted color of title in the city of St.
Louis.   The act of March 3, 1851, is a public act, and,
although excluded in the court below, this court will
take judicial notice of its provisions.   Any writing
purporting to convey the title to land by appropriate
words of transfer is color of title, although invalid, void
and incapable of conveying title.   *Hickman v. Link*, 97
Mo. 482, at p. 488.   ( 3 )   The condemnation proceedings
read in evidence were absolutely void, and should have
been excluded.   ·*Anderson v. St. Louis*, 47 Mo. 479;
*Moses v. Dock Co.*, 84 Mo. 242.   A city is not respon-
sible for acts committed by its officers pursuant to a void
ordinance.   *Worley v. Columbia*, 88 Mo. 106.

BRACE, J.—This is an action of ejectment, instituted February 20, 1878, in the circuit court of St. Louis. The answer was a general denial and a plea of the statute of limitation. The verdict and judgment was for the defendants, and the plaintiff appeals.

The action was originally instituted against the St. Louis Sectional Dock Company, a corporation in possession of the property as tenant of the city of St. Louis; and in due time said city, on its motion, was made a party defendant. The property in dispute is a parcel of ground in the south wharf of St. Louis, extending from the south line of Russell avenue, formerly Picotte street, to the north line of Trudeau street, if said lines are produced to the river, a distance of three hundred and forty-six feet and six inches from north to south, and having a width from east to west of three hundred feet; its eastern boundary at the present time is the Mississippi river, which is also the eastern line of the wharf as established by ordinance 5403; and its western boundary is block 868 of the city of St. Louis, and the western line of the wharf as established by said ordinance 5403.

The evidence for the plaintiff showed that she had acquired the title of the government to an undivided one-half of a tract of land west of the premises about one thousand feet, under a special concession made to Joseph Brazeau in 1786, confirmed and augmented by a concession made in 1799, which concession was surveyed in 1803, by which survey said grant was bounded on the east by the Mississippi river. The concession as thus bounded was confirmed by act of congress, approved July 4, 1836. The north and south lines of the tract of land in the Brazeau grant in which the plaintiff had acquired an undivided half interest, and which will hereafter be designated as the Picotte tract, if extended eastwardly to the west bank of the Mississippi river as now defined, would include the premises sued for.

The evidence tended to show that, prior to the year 1820, a bar commenced forming in the river, extending down in front of the Brazeau tract; that it continued to increase and accumulated soil, and became of such proportions that, sometime between 1820 and 1835, probably about 1830, a man by the name of Duncan moved on the formation, and commenced cultivating it.   In the year 1835, Duncan attempted to acquire title from the government to this land formation by entry under the pre-emption act of congress, and his claim seems, after his entry, to have been surveyed by a United States surveyor.   But no approval of such survey appears in the evidence, and it seems the entry was afterwards canceled.   Duncan acquired no title by his pre-emption entry, however, as was held in *Jones v. Soulard*, 24 Howard, 41; *Kissell v. Pub. Schools*, 18 Howard, 19; s. c., 16 Mo. 553.   The formation in the river, after Duncan took possession of it, was always thereafter known as Duncan's Island.   The main channel of the river was east of this island.   From the beginning of this formation down to about 1845, there was between this island and the western shore of the river a slough. The evidence tended to show that this slough was navigable for steamboats when the river was in a stage of ordinary high water; that in ordinary low water it was not navigable, but water flowed through it; and, when the water was more than ordinarily low, it ceased to flow, and stood in ponds, separated by sandbars. The evidence tended to show that, in 1845, the city of St. Louis commenced erecting a system of dykes between the Missouri shore and this island, the effect of which was to check, and finally stop, the flow of water through the slough; and thereafter it was filled up, and part of it became the dry land and premises, for the recovery of which this action is brought.

The evidence for the plaintiff tended to show that the center line of the slough, before it ceased flowing,

was north and east of the premises, and that the premises was a part of the sandbar which had formed in front of, and extended from, the main-shore line of the Picotte tract ( to which it was attached ) in the direction of the island.   The evidence for the defendant tended to show that the center line of the slough was south and west of the premises, and between it and the Picotte tract, and that it was partly on the island proper, and that the remainder was an accretion to the island.   The plaintiff's ancestor, Honore Picotte, acquired title to the riparian tract, in 1835, from the legal representatives of Joseph Brazeau.   Picotte's deed called for the Mississippi river for the eastern boundary of his tract.   By act of the general assembly of Missouri, "approved March 3, 1851" (Laws of Mo. 1850, p. 573), all the right, title, interest and claim of Missouri, acquired by virtue of an act of congress, entitled, "An act to enable the state of Arkansas, and other states, to reclaim the swamp lands within their limits," approved September 28, 1850, to an island in the Mississippi river, in the county of St. Louis, called Duncan's Island, situate and being opposite to the lower part of the city of St. Louis, was "set over, transferred and conveyed to the city of St. Louis."   The city acquired no title to the island, however, under this act, as it does not appear that it was ever selected, certified or patented to the state as swamp land.

Late in the year 1858, or in the beginning of the year 1859, the Sectional Dock Company, which was then a copartnership concern, carrying on its business at the foot of Mulberry street, on the bank of the river, with the assent of the city, moved their works and business to the premises in controversy and contiguous property, formerly in the bed of this slough, or on this island. This concern was afterwards incorporated, and, ever since its removal to the premises, as tenant of the city, has been in the open, continuous and notorious possession of the same.

The character of its possession is thus stated in plaintiff's abstract of evidence: "The said company carried on there the building and repairing of boats and vessels, and employed from one hundred to, sometimes during the war, one thousand men; ordinarily, from one hundred to two hundred and fifty, according to the business, and carried a stock of lumber, as required by the business, sometimes as high, probably, as one million feet, on the entire premises occupied. The said company commenced to, put lumber on the premises sued for in 1858 or 1859, as soon as it moved there, and it and the defendant, its successor of the same name, continued to do so constantly, and always had lumber on there up to the time of the institution of this suit; it built a blacksmith shop, office, sawmill, storeroom, stables, etc., on the premises in dispute; the buildings on the property north of these premises were put there in 1862, and on these premises in 1877. It had a blacksmith shop and oakum house on these premises, covering about thirty by forty feet, put there sometime in the fall of 1860, or as late as 1862. When it first moved there, the office and store were on a barge under the dock, the ground being too low there to have a building, on account of overflow, except on the extreme northern end, at L'Esperance street, where it had a temporary blacksmith shop. * * * The occupation of the premises in controversy was principally with lumber, almost all over it—scattered all over it—but it never covered the whole ground at any one time. Had roadways through it, and the lumber piles were being continually removed and replaced almost all the time, and taking up a pile would leave the place unoccupied for the time being, and this was continuing all the time in the prosecution of the business. There was always some lumber on them, and no pile ever laid there a year, but, in dull seasons, it would lay there two or three months. Never had these premises inclosed with a fence, or similarly. These premises were also used by

mechanics in getting out work for the company. The buildings put on these premises remained there until the institution of this suit, and said premises were continually used by the defendant company and its predecessor, as aforesaid, up to that time, and no claim to the premises prior to that time was made by Honore Picotte or plaintiff, who were unknown to the witnesses, that the latter had ever heard of."

At the time the premises were thus taken possession of by the Sectional Dock Company, Honore Picotte was living in the city of St. Louis and continued to live there until his death which occurred on the fourteenth of October, 1860. He died testate, and by his will devised all of his property to his wife, Theresa, for and during her natural life with power, if necessary for the support of herself and their children, to sell and dispose of the same, or any part thereof, absolutely, and, if she should die leaving any of it undisposed of, the same should go and be distributed among their children share and share alike. He left surviving him two daughters by his wife, Theresa, of whom the plaintiff is one. She was married at the time of her father's death, and remained covert until November, 1876, when her husband died. Her mother, Mrs. Theresa Picotte, died on the tenth of December, 1869, having continued to reside in the city from the death of her husband until her own death, and never having made any claim to the premises in controversy. Honore Picotte died leaving a large landed estate, which was divided between the plaintiff and her sister in 1870.

The court upon its own motion, having refused all instructions asked for by both parties upon the issue of plaintiff's title, gave a series of instructions, in which, after defining an island and the term "accretion," in substance instructed the jury, that, if they found that the premises was an accretion to the riparian tract of plaintiff's ancestor, they should find for the plaintiff on that issue, and, if they found that the premises was an

accretion to Duncan's Island, they should find for the defendants.

As it is evident from the proceedings on the trial hereinafter noted that the jury found for the defendants upon the ground that they had acquired title to the premises under the statute of limitations we will pass to the consideration of that branch of the case first, and, if we shall find that a correct result was reached upon that issue, the necessity of resolving the questions growing out of the issue raised upon the plaintiff's title will be obviated. Upon the issue of title acquired by the defendants under the statute of limitations the court instructed the jury as follows:

"5. The court instructs the jury that if they believe from the evidence that the defendant St. Louis Sectional Dock Company, during the lifetime of Honore Picotte, entered upon the land sued for, and actually and wholly occupied the same in their business, and from the time of said first occupation so occupied the same continuously for ten consecutive years, holding the same throughout such period, openly, peaceably, exclusively and adversely to all persons claiming it in good faith as their own or as tenants of the defendant, the city of St. Louis, then the defendants have acquired title thereto by the statute of limitations, and you will find for defendants.

"6. The jury are instructed that, in the instructions in reference to the defendants acquiring title to the property in dispute by the statute of limitations, it is not meant that every foot of said land must have been continuously occupied for ten years at all times, but that the occupation must have been of such a kind evidenced by an inclosure or by visible token of possession clearly defining the limits of possession, and calculated to give notice to the true owner, and such that in itself excluded and was inconsistent with the possibility of any other person at the same time occupying and using the land or any part thereof adversely to

the defendants, and, if the occupation was of such a nature, it did not cease to be continuous because by reason of changing piles of lumber or otherwise any particular spot thereof became temporarily vacant and unused, and that such adverse possession must be made out by clear and positive proof.''

These instructions are predicated upon the uncontradicted evidence in the case, unless it can be held that there was evidence tending to show that the defendants were not at all times during the period mentioned in the instructions holding the premises adversely. In the condemnation proceeding instituted by virtue of ordinance number 5403, approved August 6, 1864, to open the wharf from Biddle street to the northern boundary of the city and from Hazel street to the southern boundary of the city, to which the plaintiff, her mother and her husband together with a great number of other citizens were attempted to be made parties, and in which the premises in controversy were included, and in which service was had on plaintiff's husband, no service was had either on the plaintiff or her mother, Mrs. Picotte.

These proceedings were approved by ordinance number 6255, July 2, 1867. They were void as to those served as well as to those who were not served, for the reason that no effort or attempt was made, before commencing such proceedings, to make an agreement with the owners for a sale of their property. *Leslie v. City of St. Louis*, 47 Mo. 474; *Anderson v. St. Louis*, 47 Mo. 479; *Moses v. Dock Co.*, 84 Mo. 242. And, being absolutely void, they were not admissible in evidence either to show title in the city, or as evidence tending to characterize the nature of the possession of the city or its tenants of the property in controversy. *St. Louis v. Ferry Co.*, 88 Mo. 615; *Worley v. Columbia*, 88 Mo. 106. Nevertheless, the condemnation proceedings were admitted in evidence over the objections of the defendant, and the following instruction was given thereupon:

"11.    The court instructs the jury that the ordinances,

5403 and 6255, read in evidence by the plaintiff, and the verdict thereunder, do not operate to give the plaintiff any title to the premises sued for, nor are they to be regarded by the jury as evidence to show that the plaintiff is the owner of said premises ; they are only admissible as a piece of evidence, not conclusive, but as tending to show the nature of the defendant's possession at the date of said ordinances."

The case was submitted to the jury on the nineteenth of March, and on the twenty-first the jury appeared in open court and propounded two questions to the court in the presence of the parties, in substance : *First.* Whether the wharf condemnation proceedings invalidated the city's claim of adverse possession ? *Second.* Whether plaintiff's marriage and the period of this married state acted as an interruption of the ten years' adverse possession ?

The answers, in substance, were, to the first question, that they did not conclusively bar the city from asserting an adverse possession, but were to be considered as admissions tending to show that the city did not so claim, and subject, like other admissions, to explanation ; and to the second, that if the defendant commenced to occupy the whole of the premises in the manner explained in the instructions, numbered 5 and 6, given, during the life of Picotte, and held them adversely, as therein explained, from that time, for ten consecutive years, that plaintiff's married state did not interrupt the adverse possession.

Plaintiff excepted at the time to the giving of each of the foregoing, and requested permission of her counsel to argue the case as presented by them, which was refused on objection of defendant's counsel, and exceptions taken at the time.

From what has been said it appears then, by the uncontradicted, legal evidence in the case, that, when this suit was commenced, the defendant had been in the peaceable, open, notorious, continuous adverse possession

of the premises for at least nineteen years, that the statute began to run in favor of such possession during the lifetime of plaintiff's ancestor, Honore Picotte, and that the defendant's possession had ripened into a perfect legal title at least nine years before the commencement of the suit. The only error in the instructions, or in the answers given to the jury's questions, was an error in favor of the plaintiff giving in her favor an effect to the condemnation proceedings to which, in law, they were not entitled. The action of the court in receiving and answering the questions was entirely proper, and is sanctioned by the repeated decisions of this court. Conceding that the trial court, in the exercise of a wise discretion, in cases where additional instructions are given after the case has been submitted to the jury, may permit further argument, there was nothing in this case calling for it, and the court committed no error in refusing the request therefor.

Whatever the strength of plaintiff's title, and upon that we express no opinion, she could not recover unless the jury found for her on both issues; and, as the finding on the second issue could only have been for the defendant, the judgment is for the right party, and is affirmed. All concur.