Fullebton, J.
 

 The appellants, George Thomas and Ethel Thomas, were jointly informed against by the prosecuting attorney of Snohomish county for the crime of having in possession intoxicating liquors with
 
 *582
 
 intent to sell the same. There was a trial by jury, in which the jury returned a verdict of guilty as charged. The appeal is from the judgment and sentence pronounced upon the verdict.
 

 The first of the errors assigned raises the question of the sufficiency of the proofs on the part of the state to justify the verdict. It appears that the appellants were the proprietors of a hotel located in the second story of a building in the city of Everett. There were certain rooms in the building reserved for the exclusive use of the proprietors, consisting principally of a living room, dining room, kitchen and a bedroom. Another was an office or waiting room, and others chambers for the use of guests.
 

 On the night of May 5,1928, the place was raided by the police officers of the city of Everett for intoxicating liquors. Search was made of the entire building, and no liquor was found in any of the rooms except in a guest chamber. In this room a number of flasks were found containing intoxicating liquor, together with some empty bottles. The cache where the liquor was found was cleverly concealed. It was built into the wall of the building in such a manner as to make it look like the remaining part of the wall, and so as not to be noticeable by mere observation. The latch to the opening was on its inside and likewise invisible. The officers opened the cache by inserting the blade of a putty knife into an apparent crack between the wall and a window casing. The liquor discovered by the officers was wrapped in a newspaper bearing the date of the day before the raid.
 

 The room bore evidence of occupancy by a guest. There were a number of articles therein of a kind not usually found in the furnishings of a hotel guest chamber, and certain letters were found addressed to a person who the proprietors testified was the occupant
 
 *583
 
 of the room. The occupant was not found in the room, nor were the officers able to locate him by a subsequent search.
 

 There were other things connected with the establishment, however, not usually found in hotels or rooming houses used exclusively for their ostensible purposes. The office or waiting room above mentioned is the room into which visitors and guests first entered on ascending the stairway leading from the street into the hotel. In a door opening from the waiting room into one of the private rooms of the proprietors, was a peephole so arranged that a person entering the waiting room could be observed by a person in the private room without himself being observed. Elsewhere in the private rooms were openings into which liquids could be poured, and one of them was sufficiently large to permit the deposit of ordinary whiskey flasks and drinking glasses, and the evidence of the officers is that it had been used for such purposes. When the officers entered the building, the faucet in the kitchen sink was flowing freely, and an odor of moonshine whiskey was noticeable there, as well as elsewhere in the apartments.
 

 The appellants denied any knowledge of the cache found in the guest room, and denied that they had kept intoxicating liquors in the building elsewhere for the purposes of sale or for other purposes. There was evidence tending to show that some, if not all, of the contrivances mentioned were in the building at the time the appellants leased it, and that as to some of them they had no knowledge until they were pointed out by the officers. But they had been in possession of the building for some eighteen months and had taken no steps to eradicate those that were obvious to them.
 

 It is the appellants’ first contention that the facts shown are not sufficient in law to warrant the
 
 *584
 
 court in submitting the question of the appellants’ guilt to the jury; that they are, to use the language of their learned counsel, “at most, if you will, suspicious circumstances.” Stress is particularly laid on the surroundings of the place at which the liquors were found. It is argued that these, while they may show that the guest occupying the room was guilty of the crime of unlawful possession of intoxicating liquors, are without weight when applied to the appellants. But too much stress must not be laid on the place, or on the surroundings of the place, at which a cache of liquors is found. The concealment of such places has become a fine art. Every method which a fertile and ingenious mind can conceive is resorted to in the first instance to conceal the place, and, in the second, to so disguise it as to make it appear, should the place of concealment be discovered, that the liquors found therein belong to some one other than the true owner. The place of concealment and the surroundings were here possibly unusually clever, but the facts are to be considered as a whole, and, so viewing them, we can reach no other conclusion than that they presented questions for the consideration of the jury.
 

 The court gave to the jury the following instruction :
 

 “You are instructed that the right of a tenant and occupant of a room in a hotel or lodging house where service is rendered by a landlord by way of caring for the room or the bed, is not so far as exclusive and sole dominion over such room as will relieve' a landlord who, with actual knowledge of the deposit and keeping by the tenant of intoxicating liquor therein with intent to sell, such, if it exist, suffers and permits these things to be, from being legally chargeable with the possession thereof. Such a state of facts would constitute on the part of the landlord a conscious possession of intoxicating liquor coupled with the power of disposition thereof. A landlord under such a state
 
 *585
 
 of facts would legally do more than give mere silent assent to the fact of possession and intent to sell on the part of the tenant and would himself do, relative to such possession and intent that which in law amounts to an affirmative, positive, physical act. A landlord under such a state of facts would legally be an aider and abetter of the tenant and legally responsible as a principal in crime.
 

 “Therefore, should it transpire that you believe beyond a reasonable doubt, after considering all the evidence adduced upon behalf of both the state and the defendants, that the defendants actually knew that a tenant of the room referred to in the testimony as room number thirteen kept the bottles in evidence here as state’s exhibits A-l and A-13, inclusive, in such room or in a so-called cache in one of the walls thereof, that the contents of such is moonshine whiskey and that such keeping was with intent to sell such or some part thereof and that defendant, with such knowledge, suffered and permitted such things to be, then the defendants must be found guilty in manner as the occupant of the room would be guilty upon such facts, if so proven, of unlawful possession of intoxicating liquor with intent to sell such.”
 

 It is contended that the instruction is erroneous because it is in effect an instruction that passive acquiescence in crime is equivalent to active participation therein, whereas the rule is that, to participate in, or aid or abet, a crime, the party must be guilty of some overt act connected therewith; he must be guilty of something which either directly or indirectly contributes to the act, and that merely to suffer or permit an act to be done is not to contribute to the act. But, as applied to the facts in the case before us, we think there was no error in the instruction. In
 
 Moody v. State,
 
 14 Ga. App. 523, 81 S. E. 588, it is held that one who rents a house to another with the knowledge that the latter intends to use it for the illegal sale or storage of intoxicating liquors is an accessory, aiding and
 
 *586
 
 abetting in the commission of the offense, and majr be convicted and punished as a principal. To the same effect is
 
 Steir v. United States,
 
 2 Fed. (2d) 149. In that case the plaintiff in error had- leased premises to another which that other had used in the unlawful manufacture of intoxicating liquors. The court sustained his conviction as a principal in the offense, using this language:
 

 “If he had knowledge and knowingly allowed Pillar to use the tenement for unlawful purposes, there was evidence upon which a verdict of guilty could be based. The relation of Steir in such case to the unlawful act would be more than that of passive acquiescence; it would make him an aider and abetter in the commission of the crime and liable to indictment as a principal.”
 

 In
 
 Reynolds v. United States,
 
 282 Fed. 256, it is said:
 

 “We do not doubt that the relation of a landlord to manufacturing carried on by a tenant, and after the landlord has knowledge of the tenant’s enterprise, may be such as to constitute aiding and abetting, and accordingly to make the landlord a principal, under Criminal Code, § 332 (Comp. Stat. § 10506), and liable to conviction upon the indictment for the principal offense.”
 

 Cases analogous in principle are cases relating to gaming houses. It is generally held that, if a proprietor of a place leases rooms therein and allows them to be used for gaming, he may be convicted for maintaining a gaming place.
 
 Stevenson v. State,
 
 83 Ga. 575, 10 S. E. 234;
 
 Scott v. State,
 
 29 Ga. 263;
 
 People v. Trainor,
 
 57 App. Div. 422, 68 N. Y. Supp. 263.
 

 The principle applies with greater force to an innkeeper. Since the earliest times, an inn has been regarded as of a public, or quasi-public, character. Its keeper is invested with many privileges and is correspondingly burdened with many responsibilities.
 
 *587
 
 One of these responsibilities is that he must maintain an orderly house. He may not use it as a place for the commission of crime himself, nor may he knowingly permit it to be so used by others. It is true that, when an innkeeper leases a room in his house to a guest, he loses control over it temporarily for the lawful uses of the guest. But it is only for lawful uses. If the guest uses the room for unlawful purposes, he is subject to immediate eviction by the landlord. And for a landlord to consent to unlawful uses, which he has the power to prevent, is to become a participant in the unlawful use.
 

 The appellant cites our case of
 
 State v. Peasley,
 
 80 Wash. 99, 141 Pac. 316, as controlling the question here involved; but we think its mere reading shows it to be without application. The court there charged that a mere assent of a party to a theft was sufficient to make him an aider and abetter in the offense. We held the instruction error, as we now think rightly so, but cannot conceive that it is applicable to a state of facts such as is here shown. The case of
 
 State v. Klein,
 
 94 Wash. 212, 162 Pac. 52, is more to the point. There we said:
 

 “The giving of the following instruction is also assigned as error:
 

 “ ‘In order to make a person guilty of a crime it is not always necessary that he do the criminal act with his own hands. If a person with intent that another shall commit a crime and to incite him to commit it intentionally signifies to that other his assent to the other’s commission of the crime, and if the other is thereby incited to commit the crime, and as a proximate result of such incitement does commit it, the person who signifies to' the other his assent to the commission of the crime aids and abets its commission in the sense I shall use said words in these instructions.’
 

 “It is argued, in substance, that under this instruction a conviction for aiding and abetting would have
 
 *588
 
 been justified by proof of mere knowledge and tacit assent by silence. An instruction reasonably capable of such a construction would be clearly erroneous under the rule announced in
 
 State v. Peasley,
 
 80 "Wash. 99, 141 Pac. 316. Had the word ‘assent’ been used disjunctively in the instruction here, as it was in the one there involved, there would be force in appellant’s criticism. In that case it is said that there must be some form of overt act; ‘the doing or saying of something that either directly or indirectly contributes to the criminal act.’ The instruction here involved palpably meets that criterion. The instruction says that when one ‘with intent’ and ‘to incite’ another to commit a crime ‘intentionally signifies to that other his assent’ and the other as a ‘result of such incitement does commit it,’ the first person aids and abets. The quoted words necessarily imply some overt act by deed or word ‘signifying’ the assent.”
 

 Manifestly, for a person to suffer and permit a thing to be done which he is legally bound to prevent, is to do more than merely acquiesce .therein.
 

 The appellants assign error on the rulings of court in'the admission of testimony. These relate to prior raids made on the place by the police officers in a search for intoxicating liquors. The raids were made while the appellants were in possession of the premises, and the officers were permitted to testify to the evidence they found of the presence of intoxicating liquors in the rooms reserved by the appellants for their individual use. The evidence was admissible as tending to show knowledge on the part of the proprietors that some one was making use of the premises for the illicit traffic in intoxicating liquors, even if it had no direct bearing on the question of their guilt of the crime charged against them.
 

 The judgment is affirmed.
 

 Mitchell, O. J., Main-, Millard, and Holcomh, J J., concur.