[No. 24065. Department Two. December 30, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v.
ADOLPH F. LINDEN *et al.*, *Appellants.*[1]

[1]Reported in 17 P. (2d) 635.

94

*E. D. Phelan* and *A. Emerson Cross,* for appellant Linden.

*Poe, Falknor, Falknor & Emory,* for appellant Campbell.

*Robert M. Burgunder,* for respondent.

MAIN, J.—Adolph F. Linden, E. W. Campbell and Carl G. Nelson were, by indictment which contained three counts, charged with the crime of grand larceny. To the indictment, a demurrer was interposed, and overruled. The trial resulted in a verdict of guilty as to Linden and Campbell, and an acquittal as to Nelson. The convicted defendants each moved in arrest of judgment and for a new trial, all of which motions were overruled. Separate judgments were entered against the convicted defendants and sentence imposed, from which they appeal.

The appellants appear by separate briefs and different counsel. Many questions are presented, and the facts which are necessary to an understanding of a particular question will be stated in connection with the consideration of the question. It is only necessary to state a few of the preliminary facts.

The Puget Sound Savings & Loan Association was a corporation engaged in the ordinary business of such an association, which was the receiving of deposits and the making of loans. Linden was the president of the association, Campbell the vice-president, and Nelson secretary. As one entered the banking room from the front or street entrance, to the right was a railing, such as ordinarily appears in banking houses. Back of this were the desks of the three officers mentioned, the first being that of Linden, the second Campbell, and the third Nelson. Next to the desk of Nelson the tellers' cages began, and the first one was occupied by one M. N. Ostey as teller.

In the first count in the indictment, the officers named were charged with having converted trust funds which came into their possession between May 14, 1928, and June 3, 1928, to the use of the Northwest Radio Service Company, a corporation, and the American Broadcasting Company, "and to the use of other persons than the true owners thereof," with intent to deprive and defraud the Puget Sound Savings & Loan Association. The second and third counts are to the same effect, covering different periods of time, and each contains a like clause to that appearing in the first count, which is quoted. There are many questions presented, and, in considering them, we shall follow the order adopted in the appellant Campbell's brief, and, after these are disposed of, consider any additional question that may appear in the brief of the appellant Linden.

In support of the demurrer, the appellants contend that the indictment is bad because it did not name specifically the other persons referred to in the quoted clause, and this presents the first question.

The indictment is based upon Rem. Rev. Stat., § 2601, subd. 3, which provides that every person who,

with intent to deprive or defraud the owner thereof, having any property in his possession, custody or control,

". . . as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation, . . . shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . . steals such property and shall be guilty of larceny."

The import of the indictment is that the appellants were guilty of a fraudulent breach of trust in respect of money of their principal that had come into their possession by virtue of a fiduciary relation, and had wrongfully and fraudulently assumed dominion over it and had appropriated the same to the use of the radio company or the American Broadcasting Company, and to the use of other persons than the true owner. Under the statute and under the indictment based thereon, it was immaterial as to whether the appellants were the recipients of the benefits of the wrongful appropriation, or whether a third person reaped the benefits thereof; and for this reason the indictment was not bad, by reason of the fact that it used the expression "and to the use of other persons than the true owner."

In the case of *Lacy v. State,* 13 Ala. App. 212, 68 So. 706, where the question presented was very much like that we are here considering, it was said:

"It is urged as an objection against some of the counts charging embezzlement that they aver that the defendant 'embezzled or fraudulently converted to his own use or the use of another' the property of his principal, without averring the name of the third person designated as 'another.' The clear import of this averment is that the defendant was guilty of a

fraudulent breach of the trust that had come into his possession by virtue of the fiduciary relation, and a wrongful and fraudulent assumption of dominion over it in total disregard and denial of the rights of the true owner (*Wall v. State*, 2 Ala. App. 164, 56 South. 57; *Boutwell v. Parker*, 124 Ala. 342, 27 South. 309; 15 Cyc. 521g), and it is wholly unimportant as to whether the defendant was the recipient of the benefits of the crime, or whether a third person reaped the benefits thereof. For this reason, it was not necessary for the indictment to aver the name of such third person.''

The case of *State v. Carey*, 4 Wash. 424, 30 Pac. 729, is based upon entirely different facts, and that case would not justify a holding in this case that the indictment was not good.

In addition to this, the quoted language may be regarded as surplusage, and the indictment would still be sufficient to charge the crime, because it specifically says that the property was converted to the use of the appellants and each of them unlawfully, fraudulently and feloniously, and to the use of the Northwest Radio Service Company and the American Broadcasting Company. *State v. Hemhelter*, 115 Wash. 208, 196 Pac. 581; *State v. Fitzpatrick*, 141 Wash. 638, 251 Pac. 875. The demurrer to the indictment was properly overruled.

It is next contended that the court erred in refusing to require the state to furnish to the appellants a list of its witnesses. The appellant Campbell objected to going to trial until a list of witnesses had been furnished. Whether the furnishing of a list of the witnesses is necessary when the charge is by indictment, depends upon whether it is required by statute. Laws of 1925, Ex. Ses., p. 420, § 1 (Rem. Rev. Stat., § 2042), amended Rem. Comp. Stat., § 2042,

and provided that, upon a true bill or indictment being presented to the court,

". . . the clerk of the court must, within one day after demand made, furnish the defendant, or his counsel, a copy thereof without charge, or permit the defendant's counsel, or the clerk of such counsel to take a copy."

There is no provision in that section with reference to the furnishing of a list of the witnesses.

Section 2 of the same chapter, p. 420 (Rem. Rev. Stat., § 2050), amends Rem. Comp. Stat., § 2050, and provides:

"All informations shall be filed in the court having jurisdiction of the offense specified therein by the prosecuting attorney of the proper county as informant; he shall subscribe his name thereto, and at the time the case is set for trial the prosecuting attorney shall file with the clerk a list of the witnesses which he intends to use at the trial and serve a copy of the same upon the defendant, and within five days thereafter the defendant shall file with the clerk and serve upon the prosecuting attorney a list of the witnesses which the defendant intends to use at the trial."

It thus appears that the provision with reference to furnishing a list of the witnesses appears in the section which has to do with informations, and does not appear in the previous section which covers the matter of indictments. From this, it would seem to follow that the legislature did not intend to require a list of witnesses to be furnished when the charge was by indictment. The names of all the witnesses that appeared before the grand jury were indorsed upon the indictment, but whether this was necessary it is not necessary here to determine, and we express no opinion thereon.

Assuming, without deciding, that it is necessary to furnish a list of witnesses when the charge is by in-

dictment, the fact that they were not furnished would not constitute reversible error in this case. No surprise was claimed by reason of the fact that the list of witnesses had not been furnished or a continuance asked for, and consequently, there could be no reversible error in so far as this contention is concerned. · *State v. Harding,* 108 Wash. 606, 185 Pac. 579.

█ It is next contended that the evidence is not sufficient to sustain a conviction as to the appellant Campbell. During the periods covered by the three counts in the indictment, Campbell was the executive officer in charge of the conducting of the affairs of the bank. Linden, during this time, while he was president of the association, was managing and conducting the affairs of the Northwest Radio Service Company, which owned and operated a radio station in the city of Seattle. During this time, Linden owned the stock of the radio company and spent his time in the offices of that company.

Count one of the indictment charges the appropriation of $23,604 between May 14, 1928, and June 3, 1928. Count two charges the appropriation of $85,-085.41 between June 9, 1928, and August 18, 1928. Count three charges the appropriation of $18,000 between September 19, 1928, and December 7, 1928. When Linden needed money in the operation of his radio affairs, he would either go to the Puget Sound Savings & Loan Association or send his secretary, and get either a check or cash. If cash were gotten, which was the most usual way, and the secretary was sent for it, she would approach the desk of Nelson, the secretary of the association, and he would immediately go to the cage of Ostey and get the money and hand it to her. Campbell's desk was within a few feet of that of Nelson.

Linden's secretary testified that there was nothing secret about the manner in which the money was obtained. Linden's secretary, who, as stated, from time to time went from the radio office to the bank to get money, testified as follows:

"Q. Then you would follow Mr. Linden's directions and go down to get the money from Mr. Nelson or Mr. Campbell, one or the other? A. Usually Mr. Nelson. I have gotten it a few times from Mr. Campbell."

Linden testified:

"Q. I am talking about your talk to Mr. Campbell now. I want to know why you told him what would· happen to him if the radio was a success? A. I told him that because I wanted to get out of the Puget Sound indebtedness and ·clean it up. By virtue of that he would have his part and I would have mine. Q. You have testified that you went to him from time to time and discussed, however, about the money. You told Mr. Falknor that. A. Yes. Q. Then you would go to Nelson and get the money? A. Yes. Q. Why go to Mr. Campbell? A. Because Mr. Campbell was the active executive officer in charge of that institution."

The money which is covered by the three counts went to the radio company in which Campbell at the time was not interested. To sustain a conviction as to him, it may be admitted that it was necessary that he did not merely acquiesce or assent to the wrongful appropriation, but that he did some affirmative or overt act as an aider or abettor. *State v. Peasley,* 80 Wash. 99, 141 Pac. 316. If the testimony of Linden and his secretary is to be believed, and the jury had a right to believe it, Campbell did more than merely assent or acquiesce, because, according to the testimony of these witnesses, he was interested in the success of the radio company; Linden discussed with him the matter of taking the money from the loan association;

he approved of the same, and on a few occasions actually got the money from the teller's cage and gave it to Linden's secretary. From what has been said in this connection, and other facts as they appear in the record, it cannot be held, as a matter of law, that the evidence was not sufficient to sustain the conviction of Campbell. The question was plainly one for the jury.

It is next contended that the court should have required the prosecuting attorney to elect upon which one of the three counts the appellants should be tried. This contention is based on the assumption that the appropriations from the first date in the first count to the last date in the third count constituted a continuous offense, and that they could not be grouped in three separate periods and a count based upon each period.

The appropriations, from what has already been said, appeared from time to time over a period of approximately seven months. Under the law, the appellants could have been charged with a distinct offense for each appropriation, or they could have been charged with a continuing offense covering the entire period; but it was not necessary that they be charged in one of these two ways. Where the periods covered by the different counts are separate and distinct, as they are in this case, the wrongful appropriations during each period may be charged in a different count. This is, in effect, the holding in *State v. Owens,* 157 Wash. 54, 288 Pac. 233. In 16 C. J. 268, it is said:

"Each day during which it is continued constitutes a separate offense and will support a separate prosecution, provided the information or indictment alleges such specific day, and the state confines its proof to the date alleged. An acquittal or a convic-

tion upon a charge that a continuing offense has been committed during a specified time will be a bar to another prosecution for a like offense during another specified time which includes any part of the time named in the first charge. Where the periods covered by the two indictments are entirely separate and distinct, a prosecution under one will not bar a prosecution under the other.''

But if it be assumed that the appellants should have been charged with one continuing offense for the entire period of time covered in the three counts, it would not affect the result in this case, because the appellants have not been prejudiced by reason of the fact that each of them was convicted on three counts. The court sentenced each of the appellants to serve a term ''of not less than five (5) and not more than fifteen (15) years on each count, the sentences to run concurrently.'' *State v. Lopeman,* 143 Wash. 99, 254 Pac. 454.

It is next contended that the court erred in admitting in evidence what is referred to as appellant Linden's exhibit ''U'' and state's exhibit ''17.'' Exhibit ''U'' is a trust agreement which was signed by the appellants, their respective wives, and the Camlin Investment Company.

The situation which gave rise to this agreement appears to have been this: September 30, 1926, a special meeting of the board of directors of the Puget Sound Savings & Loan Association was held, at which meeting it was disclosed that there had been advanced to the Camlin Investment Company $865,988.94, the KJR Radio Station $27,850.70, Seattle, Office Equipment Co. $45,000, and the Grover C. Winn Co. $5,000. At this meeting, the officers of the association were instructed that no more advances were to be made to the Camlin Investment Company, the Seattle Office

Equipment Company, KJR Radio Station, or the Grover C. Winn Company. These loans had been made without the knowledge of the board of directors, and were not made in accordance with the laws relative to savings and loan associations.

This meeting was adjourned until October 2, 1926, when a further special meeting of the board of directors was held, at which W. L. Nicely, the state supervisor of savings and loan associations, was present. At this meeting, a motion was made that the Camlin Investment Company be required to execute a mortgage, or such other instrument as the state savings and loan supervisor might approve, in the sum of $1,100,000, such mortgage or other instrument to cover the advances already made to the Camlin Investment Company and such additional advances as might be necessary to best conserve the Camlin property. At this meeting, a motion was made and carried, to the effect that appellants should give additional collateral, and exhibit "U" provides that the collateral security shall constitute a pledge for the unpaid accounts standing in the name of the Camlin Investment Company in the sum of $1,170,921.55.

It is claimed that the introduction of exhibit "U" was prejudicial to the appellant Campbell. It was offered in evidence, as already indicated, by Linden, and not by the state, and was objected to by the state. Even though the exhibit was offered by Linden, if competent, it was evidence against the other persons charged in the same indictment. *Commonwealth v. Brown,* 130 Mass. 279; *State v. Thaden,* 43 Minn. 325, 45 N. W. 614.

The fact that exhibit "U" showed or tended to show the commission of a crime or crimes prior to the ones with which the appellants were charged does not make it inadmissible, since intent was an

element of the crime which must be established by evidence. When intent is a necessary element of the crime, evidence of other crimes than the one with which the accused is being tried, may be received as bearing upon that question. *State v. Harkness,* 136 Wash. 691, 241 Pac. 297; *State v. Clamp,* 164 Wash. 653, 3 P. (2d) 1096, 80 A. L. R. 1302; *State v. Schultz,* 168 Wash. 120, 10 P. (2d) 980.

■ The facts stated in the trust agreement were not so remote in point of time as to have no substantial evidentiary value as bearing upon the question of intent. *State v. Morgan,* 146 Wash. 109, 261 Pac. 777; *State v. Schultz,* 168 Wash. 120, 10 P. (2d) 980.

■ As to the Nicely letter, this was addressed to Linden, Campbell and Nelson, and dated September 22, 1927, and was signed by "W. L. Nicely, supervisor of the division of savings and loan in and for the state of Washington." In the letter, each of the persons to whom it was addressed was notified that there should be no further appropriation of the funds of the savings and loan association as there had been in the past, and called attention to the fact that, if the instructions in the letter were violated, it would result in immediate removal and prosecution of the offending officer. When the letter was admitted in evidence, the court expressly instructed the jury regarding the purpose for which it was introduced, and the jury were told that it was not evidence of the truth of any statement contained therein. The letter was admissible for the purpose of showing that the appellants were notified not to do the things with which they were charged in the indictment as having done subsequently, and has bearing upon the good faith and intent of the appellants in the subsequent withdrawals of money. There was no error in admitting either of the exhibits complained of.

 It is next contended that there was error in the scope of the cross-examination by the state of the witness M. N. Ostey. But there was no error in this regard. The matter of the scope of the cross-examination of a witness rests largely in the discretion of the trial court, and this court will not disturb the ruling of that court unless the discretion was abused. There was no abuse in this case. The witness, upon his direct examination, had given testimony favorable to Campbell, and it was proper, on cross-examination, to go into the matter which was objected to as showing the interest, if any, of the witness.

 It is next contended that the trial court erred in an oral instruction relative to restitution and intent, given to the jury during the course of the trial and while a witness was on the stand. The case was on trial for approximately a month's time, and during the course of the trial the court repeatedly, at the request of counsel for the respective parties, instructed the jury as to the purpose for which they could consider certain testimony and limited its application. Rule of Practice IV, Rem. Rev. Stat., § 308-4, 159 Wash. lx, provides in part:

"The court must reduce the charge to be given to the jury to writing and cause copies thereof to be furnished to counsel; and, at the conclusion of the evidence, he shall read his written charge to the jury. . . ."

This rule is not applicable to instructions which it may be necessary for the court to give during the progress of the trial in order to enable the jury to properly consider the evidence and understand any question to which the testimony may be directed. *State v. Thompson,* 113 Wash. 696, 194 Pac. 553; *State v. Jensen,* 114 Wash. 401, 195 Pac. 238.

It is next contended that the court should have given certain of the appellant Campbell's requested instruc-

tions. The theory of this appellant was that he did no affirmative or overt act in aiding or abetting the removal of money from the savings and loan association for the radio company; that the bank, during the period covered by the counts in the indictment, was practically in control of the state supervisor of savings and loan associations; and that officer, after being informed of what was taking place, permitted it to continue.

To the instructions by which the case was submitted to the jury, no exception was taken, except as to two thereof, and no error is now predicated upon these two instructions. The instructions, as given, therefore became the law of the case. *National Ass'n of Creditors v. Grassley,* 159 Wash. 185, 292 Pac. 416; *Castleman v. Schiffner,* 160 Wash. 313, 294 Pac. 983.

One of the instructions requested contained the statement that mere knowledge or assent, unaccompanied by positive, overt acts aiding and abetting the wrongful acts, was not sufficient to warrant a conviction. Rem. Rev. Stat., § 2260, provides that a principal includes every person

". . . who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony."

Instruction No. 4, given by the court, is in the language of this statute. There was no error in refusing to give the instruction as requested. While mere knowledge or assent as a rule, unaccompanied by anything more, is not sufficient to constitute aiding and abetting, it is not always necessary that aiding and abetting must be accompanied by overt acts.

In *State v. Thomas,* 156 Wash. 583, 287 Pac. 667, after citing and quoting from *State v. Peasley,* 80 Wash. 99, 141 Pac. 316, it was said:

"Manifestly, for a person to suffer and permit a thing to be done which he is legally bound to prevent, is to do more than merely acquiesce therein."

With reference to the requested instructions to the effect that the appellant Campbell could not be convicted if it should appear that the state supervisor of savings and loan associations neglected to remove Linden from the office of president of the association over the continued protest of Campbell, and allowed the offending official to make further unlawful diversions; and that if Campbell did not aid and abet any such taking by an affirmative, overt act, he should be acquitted, it may be said: In instruction No. 14, the jury were told that, if any defendant feloniously appropriated the money, as alleged in the indictment, then it would be no defense that the director of the association or state supervisor of savings and loan associations may have knowledge thereof or have acquiesced therein. The fact that the state supervisor of savings and loan associations failed to do his duty, if he did so fail, would not excuse the appellant Campbell. *Quertermous v. State*, 95 Ark. 48, 127 S. W. 951; *Glasheen v. State*, 188 Wis. 268, 205 N. W. 820; *State v. Schultz*, 52 S. D. 209, 217 N. W. 213.

It is next contended that the court erred in giving what is referred to as the supplemental instructions. The jury retired to consider their verdict at about one o'clock p. m., Thursday, October 22, 1931. Thereafter, and on Saturday, October 24, after the jury had been deliberating for approximately two days, the court, of its own motion, called the jury into the jury box and gave some additional instructions, and especially an instruction on intent which is couched in simple and plain language. In these supplemental instructions, the jury were also told that mere knowledge or tacit assent by silence did not constitute aiding,

abetting, counseling, encouraging, inducing or procuring the commission of a crime, in the absence of some word 'or act intentionally done or spoken signifying assent to the commission thereof. This last instruction was somewhat to the same effect as the requested instruction of Campbell, first above mentioned.

In the supplemental instructions, we find no incorrect statement of the law. The question then, on this branch of the case, is whether the court, of its own motion, had a right to recall the jury and give them further instructions, and, after having given such instructions, refuse the request of counsel to further argue the case.

Rem. Rev. Stat., § 352, provides that, after the jury have retired for deliberation, if they desire, on any point of law arising in the case, they may require the officer having them in charge to conduct them into court. In this statute, there is no provision that the court may not, of its own motion, call the jury into court after they have retired to deliberate on the verdict to give them further instructions upon the law. Under a similar statute in the state of California, it was held in *People v. Perry,* 65 Cal. 568, 4 Pac. 572, that the statute of that state only declared the right of the jurors to demand to be reconducted into court, and did not prohibit the trial judge from calling the jurors back, without their request, after they had retired.

In this connection, the question would arise as to whether the court, acting of its own motion, abused its discretion. A judge of the trial court is not a mere figurehead, and he is charged with the direction of important public business. The atmosphere of the trial court room cannot be carried into a court of error, nor can the considerations which moved the trial judge to

action be displayed in the printed record. What he says and does in the conduct of a trial, which appears on the record, may be considered, and, if wrong, corrected.

In *Allis v. United States,* 155 U. S. 117, it is said:

"It is a familiar practice to recall a jury after they have been in deliberation for any length of time for the purpose of ascertaining what difficulties they have in the consideration of the case, and of making proper efforts to assist them in the solution of those difficulties. It would be startling to have such action held to be error, and error sufficient to reverse a judgment. The time at which such a recall shall be made, if at all, must be left to the sound discretion of the trial court, and there is nothing in the record to show that the court, in the case at the bar, abused this discretion or failed to wait a reasonable time for the consideration of the case by the jury under the charge as already given."

We have not overlooked the fact that this court, in two or three cases, has said that the practice of voluntarily recalling the jury by the court is not to be commended, but in no case, so far as we are informed, has a judgment been reversed because the trial court did so. In the present case, the trial court did not abuse its discretion in voluntarily calling a jury into court and in giving them the additional instruction. The reasons which prompted the trial court to do so may be best stated in the language of the memorandum opinion of that court, written upon the motion for new trial, as follows:

"This case consumed an entire month in its trial. The cause was submitted to the jury on Thursday noon, October 22; the jury had not agreed by Saturday noon, October 24, forty-eight hours later. Counsel know— at least the court knows, and I think that everybody else knows—that the stumbling block in the minds of the jurors was the question of intent. That was the very crux of the case. Two other juries had disagreed

in a former case against Mr. Linden, arising out of the same character of transactions, and the matter of intent had played a major part therein. Counsel in their argument to the jury in this case had labored forcefully and vehemently on that point. They had argued and insisted that there was no intent to steal. In fact, 'intent' had been blazoned before the jury until it stood out like an illuminated Neon sign at midnight. It practically paled everything else. The jury, as average individuals, unused to fine legal discriminations, might well understand the element of intent as applied to an ordinary common law larceny—the stealing of a horse or of a bag of money. But when that concept was applied to larceny by embezzlement, as defined by the statute, it left them confused and helpless. . . . The jury could not discriminate between the ordinary case of stealing and that which the statute defines as larceny by embezzlement. I take it that courts are not presumed to be mere figureheads, and do not fully discharge their duty when they have merely read a set of instructions, no matter how intricate or confusing they may be. I apprehend that one function of the court is to assist the jury in understanding what the law really is, so that it may properly apply it to the facts proven. Being convinced from a subsequent reading of the instructions themselves and from the interpretation placed thereon by counsel that the jury was confused, and having the fact demonstrated by the jury's inability to agree upon a verdict, one way or the other, I determined to make an endeavor to couch a certain portion of the instructions in more simple language, that there might not be any doubt about it. . . . The general acceptance of certain standard instructions, without regard to the jury's ability to understand them, and the lack of time usually available in the trial of cases, are among the chief reasons why courts do not oftener give simple instructions. No one will contend that courts should make a practice, generally, of giving added instructions to explain those already given. But particular circumstances may warrant, even demand, that the court should do this, in the furtherance of justice.''

██ Whether further argument should have been permitted, after the giving of the supplemental instructions, was also a matter which rested within the discretion of the trial court *(State v. Hewett,* 103 Wash. 52, 173 Pac. 726; *Kennedy v. Commonwealth,* 30 Ky. Law Rep. 1063, 100 S. W. 242; *Wilkinson v. St. Louis Sectional Dock Co.,* 102 Mo. 130, 14 S. W. 177); and in refusing the request for further argument, the court did not abuse that discretion.

██ In addition to the questions disposed of above, the appellant Linden contends that the court erred in not giving his requested instructions, to the effect that the jury could not convict unless they found that Linden appropriated the money of the association to his own use, with "felonious" intent to deprive or defraud the association thereof. A sufficient answer to this contention is that Rem. Rev. Stat., § 2601, upon which the indictment was based, does not use the word "felonious" or "feloniously," but provides, in effect, that the person having property in his possession in a trust relationship, who appropriates such property to his own use, with intent to deprive or defraud the owner thereof, is guilty of larceny.

██ There is the further contention that the trial court committed error in refusing to give Linden's requested instructions to the effect that he would not be guilty if he did not intend to permanently deprive the association of its money, or if he intended to repay or replace at some future time the amount withdrawn. By the 17th instruction, the trial court told the jury that it was no defense that the defendant, at the time the money was appropriated, intended to restore or repay the same at some future time, or that he could have repaid it if required to do so. This instruction, as given, is supported by the decisions of this court. *State v. Larson,* 123 Wash. 21, 211 Pac. 885; *State v. Black,*

163 Wash. 237, 1 P. (2d) 206; *State v. Williams,* 163 Wash. 419, 1 P. (2d) 307. There was no error in the refusal to give any of the appellant Linden's requested instructions.

The judgment as to each appellant will be affirmed.

TOLMAN, C. J., BEALS, and HOLCOMB, JJ., concur.

